47507. SAVANNAH ELECTRIC & POWER COMPANY v. HOLTON.

HALL, Presiding Judge. The defendant in a wrongful death action appeals from the judgment and from the denial of its motions for a new trial and judgment n.o.v.

Plaintiff's son was killed, apparently by electrocution, while working near a high-voltage line belonging to the defendant power company. He was an employee of an electrical contracting business which had been hired by a bowling alley to change the light fixtures atop the twenty-one foot outdoor light standards in its parking lot. These light standards had been in existence for several years when the power company undertook the installation of the line. The plans called for the installation of a new pole on property adjacent to the bowling alley, with the line strung from this pole to an existing pole on the bowling alley property, a distance of approximately 270 feet over sloping ground.

The evidence showed that a surveyor was sent by the power company to choose a site for the new pole; that he had no experience or training in high-voltage electricity; that he did not test soil conditions at the location of either the existing or the proposed pole; that he did not realize the line would pass over the light standards; that he did not compute the difference in elevation between the poles (although he could see one existed and ordered

the new pole to be several feet taller); that he did not determine the height of the light standards; and that the field sketch he made did not show the existence of the light standards or the difference in elevation. This sketch was approved by a power company electrical engineer before the work began, but no electrical engineer ever went to the site. Another power company employee installed the new pole and then a crew went out to string the line.

The superintendent of this crew testified that immediately after the line was strung, there was better than a three-foot clearance from the light standards. All parties agree that the minimum requirement for clearance, as estab-lished by the National Electrical Safety Code, would be three feet at maximum sag; that sag varies with temper-ature; and that sag-temperature charts are put out by the wire manufacturers. There was also evidence that the soil around both poles was loose and unstable, and that within a few days of the occurrence, the poles were leaning toward one another and the line was only about 30 inches from the standard the deceased had been work-ing on.

The owner of the business which employed the deceased, his two sons and his father were all present at the occur-rence. The deceased climbed a ladder to the top of the standard, carrying the replacement fixture and some hand tools. Only the elderly father, who died before the trial, was actually watching the deceased. The owner tes-tified, however, that his father said the electricity had arced to the body. The others all heard a loud "popping" noise and saw the body fall. The coroner testified that the cause of death was electrocution and that the body had a three-inch electrical burn on the chest.

1. There was a great deal of expert testimony, some of it conflicting. However, the evidence supports the verdict.

2. Several of defendant's enumerations of error concern its contention that it did not owe a duty of ordinary care to the deceased—that he was a trespasser, or at best a bare

licensee, to whom it owed no duty except not to do him wilful or wanton harm. This categorization of the deceased is based on the mystical notion that defendant's easement to run power lines creates a "property" in the air surrounding the lines (for some unspecified distance outward and in whatever direction they run), and that by intruding into this air space, the deceased put himself in the same legal position as if he had climbed a fence to walk upon another's land.

The contention is without merit. As a simple matter of policy, one may not, in the process of committing a negligent act, simultaneously create "property rights" which will insulate one from liability for the negligent act. Defendant's broadly worded easement may allow it to run lines in any way or in any place it chooses *in relation to the grantee's property,* but the easement does not relieve defendant from the duty to use ordinary care for human safety when it does run the lines. Further, the notion of the "surrounding air" easement has no foundation in law. Defendant cites *Kerlin v. Southern Bell Tel. &c. Co.,* 191 Ga. 663 (13 SE2d 790). However, that case merely holds that additional wires on existing poles are within the original easement.

For these reasons, the court did not err in refusing to admit the easement deed, in charging the duty of ordinary care, in refusing to charge the lesser duty of care for trespassers and licensees, or in denying the motions for new trial and for judgment n. o. v. on this ground.

3. Defendant also contends the deceased was contributorily negligent as a matter of law because he violated several provisions of *Code Ann. Ch.* 34B-2 (High-Voltage Electrical Lines). A cursory reading of one section might point to that result. The language is broad and inclusive. "The . . . handling . . . of any tools [or] supplies . . . near high voltage lines is hereby expressly prohibited, if at any time . . . such . . . tools [or] supplies . . . will be brought within eight feet of any such high voltage lines." *Code Ann.* § 34B-203. Other sections of the Chapter pro-

vide for notification of the lines' owner when such work is contemplated so it can insulate, relocate, de-energize or otherwise make the lines safe.

This Act has not been interpreted, but reading it as a whole indicates that it was not directed toward the type of person or activity involved in this case. "No person, firm or corporation . . . shall require or permit any employee to perform any act prohibited by section 34B-203 unless and until danger from accidental contact with high-voltage lines has been effectively guarded against." *Code Ann.* § 34B-202. "The Commissioner of Labor shall administer and enforce the provisions of this chapter." *Code Ann.* § 34B-207. "Any person, firm, corporation . . . who fails to comply with or who violates any of the provisions . . . shall be guilty of a misdemeanor." *Code Ann.* § 34B-9901.

Finally, the Act provides that it does not limit or reduce "the duty or degree of care now applicable to owners or operators of such high-voltage lines with respect to damage or loss to person or property." *Code Ann.* § 34B-209. This means that the Act has not subtracted a theory of liability but added another, i.e., regardless of any concurring factual negligence on the part of a power company, an employer would be negligent per se vis-a-vis an employee if it violated a provision of the Act.

It seems clear that the intent of the Act is to protect workmen by regulating the conduct of employers and owners of power lines. It is less clear because of the broad language, but inherent in the Act, that the kinds of activities intended to be covered are not random or casual exposures to lines.

The Georgia Power Company has appeared as amicus curiae in this case. It is naturally in the company's great interest to obtain a proper and definitive interpretation of Chapter 34B-2. However, we cannot agree with the view it urges. While it recognizes that the Act (or rather part of it) is directed toward employers and owners of lines and that it adds another theory of liability as well

as a criminal penalty for violation, Georgia Power contends that § 34B-203 necessarily includes any person *performing* the prohibited activities, i.e., any person engaged in certain described activities within 8 feet of high voltage lines without notice to a power company, has violated the Act. This in turn means he is not only subject to a criminal penalty but has been negligent as a matter of law.

The illogic of the criminal penalty rationale is manifest. Assuming the person is not electrocuted (perhaps making the point moot) but only caught in the act of, e.g., "handling materials" near lines, does the Commissioner of Labor institute a prosecution against him so that he can learn through punishment not to be so careless with his person?

The essence and effect of Georgia Power's contention is a nearly total limitation of liability. Its interpretation would have this result: any person killed or injured by high voltage electricity would *as a matter of law* be contributorily negligent in most situations. Any person would probably have been "handling" or "transporting" some kind of "tool," "equipment," "supplies," or "materials." A child with a pocket knife or an adult carrying an umbrella fits this broad language. His ignorance of the High Voltage Line law being no excuse, should a power company then be relieved from liability for stringing a line through a fruit tree in the child's back yard or 6 feet above a pedestrian way? We cannot accept such a broad interpretation of this Act.

It seems clear that the persons and activities toward which the Act is directed are those businesses, whether giant corporations or one-man concerns, whose usual activities would foreseeably bring their employees within close proximity to high voltage lines. The duty is placed on them to notify a power company of the proposed activity and on the power company to take any necessary technical measures for assuring the safety of the workmen. While the most obvious activities are such things as large construction projects and house-moving, the Act

could also apply to billboard maintenance, television antenna installation, etc. depending on the circumstances.

In summary, no violation was committed here by the deceased, and even if one was committed by his employer, it is irrelevant to this action. Under these circumstances, the theory of negligence per se does not apply. The court did not err in failing to charge on contributory negligence as a matter of law or in denying the motions for new trial and judgment n.o.v. on this ground.

4. Defendant also contends the court erred in refusing to allow its witness to testify concerning the substance of a conversation with a witness for the plaintiff in order to impeach that witness. On this appeal, defendant states that it wanted to show the substance of a prior statement inconsistent with the testimony of the plaintiff's witness. However, it made no such offer of proof below. The transcript shows that it merely insisted on the admission of the substance (unknown) of a conversation. There is nothing for this court to rule upon. *Hines v. Donaldson,* 193 Ga. 783 (20 SE2d 134).

5. All of defendant's other enumerations of error are without merit.

*Judgment affirmed. Pannell and Quillian, JJ., concur.*

ARGUED SEPTEMBER 12, 1972—DECIDED OCTOBER 3, 1972—REHEARING DENIED OCTOBER 26, 1972—

*Bouhan, Williams & Levy, Walter C. Hartridge, Leamon R. Holliday, III,* for appellant.

*Downing, McAleer & Gaskin, James Edward McAleer,* for appellee.

*Robert L. Pennington,* amicus curiae.