736 P.2d 1171

**Guadalupe MONARES,
Plaintiff/Appellee,**

v.

**Charles WILCOXSON and Neola Wilcoxson, husband and wife, and Phelps Dodge Corporation, a corporation doing business in the State of Arizona, Defendants/Appellants.**

**No. 2 CA–CV 5763.**

Court of Appeals of Arizona,
Division 2, Department B.

Jan. 15, 1987.

Reconsideration Denied Feb. 20, 1987.

Review Denied May 5, 1987.

Miller & Pitt, P.C. by Richard L. McAnally and Thomas G. Cotter, Tucson, for plaintiff/appellee.

Mesch, Clark & Rothschild, P.C. by John K. Mesch and Scott H. Gan, Tucson, and Anderson & Welker, P.C. by Dudley S. Welker, Safford, for defendants/appellants Wilcoxson.

Evans, Kitchel & Jenckes, P.C. by Leon D. Bess and Brad K. Keogh, Phoenix, for defendant/appellant Phelps Dodge.

## OPINION

LACAGNINA, Judge.

Phelps Dodge Corporation (Phelps Dodge) and Charles and Neola Wilcoxson (Wilcoxson) appeal from a judgment in favor of Guadalupe Monares for personal injuries suffered when a truck boom contacted a high voltage line while Wilcoxson, with Phelps Dodge's agreement, was removing vacant houses from property owned by Phelps Dodge. Prior to trial, the court granted summary judgment against Wilcoxson on the issue of his negligence. At the close of the evidence, after denying reconsideration of its pretrial ruling, the court determined Wilcoxson's liability for negligence and causation and submitted its signed forms of verdict on those issues to the jury for their signature.

The jury returned a general verdict for damages in the amount of $1,250,000 against Phelps Dodge and Wilcoxson and a special verdict apportioning liability equally between them. The jury also returned a special interrogatory, requested by Phelps Dodge, which indicated that the general verdict against Phelps Dodge was based on its liability as both landowner and distributor of electricity.

On appeal the parties make the following arguments:

1. Phelps Dodge argues the trial court improperly ruled as a matter of law that it was a distributor of electricity, without evidence to support the ruling, and therefore erroneously instructed the jury on its standard of care as a distributor.

2. Wilcoxson argues the court improperly granted motions for summary judgment finding him liable as a matter of law pursuant to A.R.S. §§ 40–360.42 and 40–360.43 and should have reconsidered its ruling in light of the evidence received at trial because the statutes were not applicable. Wilcoxson further argues that even if the statutes were applicable to the facts of this case, whether or not the failure to comply with the statutes was excusable or was a proximate cause of Monares' injuries were questions for the jury.

3. Phelps Dodge argues the court should have struck prospective juror Safford for cause.

4. Monares argues Phelps Dodge has appealed from the verdict only on the ground that it was not a distributor of electricity, and therefore, the verdict and judgment based on landowner liability is final.

We affirm the judgment against Phelps Dodge because there was sufficient evidence to support the verdict and judgment based on its liability as a landowner to support the verdict and judgment even though the court may have erroneously instructed the jury as to its liability as a distributor of electricity. We reverse the summary judgment against Wilcoxson and remand for new trial because he was entitled to a jury determination of liability and causation.

## FACTS

The pertinent facts are hereinafter stated and viewed in the light most favorable to supporting the jury verdict in favor of Monares against Phelps Dodge. As to Wilcoxson, we will consider the evidence in the light most favorable to opposing the summary judgment.

In 1984 Phelps Dodge accepted a bid from Wilcoxson to remove abandoned houses from its property known as "Tent City". Phelps Dodge asked Morenci Water & Electric Company, a wholly owned subsidiary and public utility, to disconnect the power to the houses. Morenci Water & Electric disconnected power lines serving each house and a 2,400–volt supply line in the alleys between the houses. Many of the disconnected lines were left dangling from poles and houses. Over and across the houses were lines carrying 13,800 volts which supplied the City of Clifton with electricity. At the time of the accident, the 13.8 KV lines were energized.

Before Wilcoxson began removal of the houses, Phelps Dodge told him that the utilities had been disconnected from the houses. On inspection, however, Wilcoxson found water running from one of the houses and questioned Phelps Dodge about

its statement that the utilities had been cut off. Phelps Dodge assured Wilcoxson that it had notified Morenci Water & Electric, which would take care of this problem. Phelps Dodge knew the 13.8 KV lines were in close proximity to the houses but failed to mention this fact to Wilcoxson. During removal of the first house, a boom touched one of the 13.8 KV lines, and Monares was injured. This line was owned by Morenci Water & Electric and used to distribute electricity purchased from Phelps Dodge. Phelps Dodge had a contract to provide necessary maintenance on the line, and if Morenci Water & Electric had received a request and wanted to de-energize the line, employees of Phelps Dodge would actually perform the work.

Wilcoxson testified that he relied on statements from Phelps Dodge that all utilities were off in the Tent City area and began removal, believing all wires in and around the houses were de-energized. Visual observation of dangling wires from poles and houses confirmed this belief. Phelps Dodge knew that Wilcoxson would use a boom truck and I–beam to remove the homes intact. Phelps Dodge controlled Wilcoxson's access to the property containing the houses and the 13.8 KV lines. The property was fenced, and the 13.8 KV lines came from a power generating station owned by and located on Phelps Dodge property. Information about utilities was given by Phelps Dodge which confirmed that it had contacted Morenci Water & Electric, and no one from Phelps Dodge advised Wilcoxson he should contact Morenci Water & Electric individually to arrange for de-energization of the 13.8 KV lines.

## JUDGMENT AGAINST
## PHELPS DODGE

 The jury considered two theories for imposing liability on Phelps Dodge: breach of duties owed by it both as a landowner and as a distributor of electricity. The duties owed are similar. The court instructed the jury that a distributor of electricity must take precautions commensurate with the dangers involved whenever it is reasonably anticipated that per-

sons may come into contact with its lines. The jury was also instructed that Phelps Dodge, as landowner, had a duty to maintain the area where Monares was injured in a reasonably safe condition for his use on the day of the accident and to use reasonable care to warn him of any existing hazards.

During initial deliberations, the jury returned a general verdict against Phelps Dodge. Thereafter, the court, upon Phelps Dodge's request, submitted a special interrogatory to the jury as to whether the verdict was based on Phelps Dodge's liability as landowner or distributor of electricity. The jury answered by marking an 'X' next to each request. We find there is more than sufficient evidence to support the verdict and judgment against Phelps Dodge based on its liability as landowner. Although reasonable arguments can be made in support of the court's ruling that Phelps Dodge, under the unusual facts in this case, was a distributor of electricity and that the special interrogatory and its use failed to comply with the requirements of Rule 49(h), Ariz.R.Civ.P., 16 A.R.S., we need not decide those issues. Assuming the court was wrong, a general verdict will be affirmed if one of the theories of liability is supported by sufficient evidence. *Dunlap v. Jimmy GMC of Tucson, Inc.,* 136 Ariz. 338, 666 P.2d 83 (App.1983); *Reese v. Cradit,* 12 Ariz.App. 233, 469 P.2d 467 (1970).

## SUMMARY JUDGMENT AGAINST
## WILCOXSON

We review the granting of summary judgment by construing the record in the light most favorable to the party opposing the motion and, where issues of fact are disputed or where conflicting inferences can be drawn from the facts, summary judgment is improper because trial on the merits is favored over summary disposition of a controversy. *Mid-Century Ins. Co. v. Duzykowski,* 131 Ariz. 428, 641 P.2d 1272 (1982); *Morelos v. Morelos,* 129 Ariz. 354, 631 P.2d 136 (App.1981); *Newmont Exploration Ltd. v. Siskon Corporation,* 125 Ariz. 267, 609 P.2d 82 (App.1980).

The trial court granted summary judgment and refused to reconsider its ruling after the close of all the evidence because it viewed Wilcoxson's conduct, as an undisputed violation of A.R.S. §§ 40–360.42 and 40–360.43 [1], to be inexcusable negligence as a matter of law. The court also ruled that such negligence was one of the causes of Monares' injury. Wilcoxson contends this was error. We agree.

■ In *Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983), the court adopted § 288A of the Restatement (Second) of Torts (1965). Arizona still adheres to the principle that violation of a statute intended as a safety regulation is negligence per se, but recognizes that there may be situations in which a violation may be excused unless the statute is construed as not permitting any excuses [2]. The Restatement contains a non-exclusive list of excuses:

(a) the violation is reasonable because of the actor's incapacity;

(b) he neither knows nor should know of the occasion for compliance;

(c) he is unable after reasonable diligence or care to comply;

(d) he is confronted by an emergency not due to his own misconduct;

**1. § 40–360.42. Activity near overhead line; safety restrictions**

Unless danger against contact with high voltage overhead lines has been effectively guarded against as provided by § 40–360.43:

1. A person or business entity shall not, individually or through an agent or employee, require any other person to perform any function or activity upon any land, building, highway or other premises if at any time during the performance of any function or activity it is possible that the person performing the function or activity could move or be placed within six feet of any high voltage overhead line or if ·it is possible that any part of any tool or material used by the person could be brought within six feet of any high voltage overhead line during the performance of any function or activity.

2. A person or business entity shall not individually, through an agent or employee or as an agent or employee, operate any mechanical equipment or hoisting equipment, any part of which is capable of vertical, lateral or swinging motion within ten feet of any high voltage overhead line.

**§ 40–360.43. Activity in close proximity to lines; clearance arrangements; procedure; payment; notice**

A. If any person or business entity desires to temporarily carry on any function, activity, work or operation in closer proximity to any high voltage overhead line than permitted by this article, the person or business entity responsible for performing the work shall promptly notify the public utility operating the high voltage overhead line. The person or business entity may perform the work only after satisfactorily mutual arrangements, including coordination of work and construction schedules, have been made between the public utility operating the lines and the person or business entity responsible for performing the work. Arrangements may include placement of temporary mechanical barriers to separate and prevent contact between material, equipment or persons and the high voltage overhead lines or temporary deenergization and grounding or temporary relocation or raising of the high voltage overhead lines.

B. The person or business entity responsible for performing the work in the vicinity of the high voltage overhead lines shall pay any actual expenses of the public utility operating high voltage overhead lines in providing arrangements for clearances, except in instances where the public utility operating high voltage overhead lines has installed lines within ten feet of an existing fixture or structure after the fixture or structure has been in place at the permanent location. The public utility is not required to provide the arrangements for clearances until an agreement for payment has been made.

C. The public utility shall commence construction for temporary clearances within five working days of an agreement for payment, if required, or from the date of the request of the person responsible for the work. Once initiated, the clearance work will continue without interruption to completion.

See also § 40–360.44 pertaining to violations, which provides:

A. A person or business entity or agent of the person or business entity who violates this article may be subject to a civil penalty in an amount not to exceed one thousand dollars to be imposed by the court in favor of the state to be deposited in the general fund.

B. If a violation of this article results in physical or electrical contact with any high voltage overhead line, the person or business entity violating this article is liable to the public utility operating the high voltage overhead line for all damages to the facilities and all costs and expenses, including damages to third persons, incurred by the public utility as a result of the contract.

2. See, e.g., *Wells v. Tanner Brothers Contracting Company*, 103 Ariz. 217, 439 P.2d 489 (1968); *J.H. Welch & Son Contracting Co. v. Gardner*, 96 Ariz. 95, 392 P.2d 567 (1964); *Dayton v. Palmer*, 1 Ariz.App. 184, 400 P.2d 855 (1965). See also Prosser and Keeton on Torts § 836 at 228 and § 230 (5th ed. 1984).

(e) compliance would involve a great risk of harm to the actor or to others. Restatement (Second) of Torts § 288A at 33 (1965).

■ The Restatement recognizes that laying down general rules as to when excuses will be recognized is difficult:

> The extent to which such excuses will be recognized is in large part a matter of the type of statute and the purpose which it is intended to accomplish, together with the variety of situations which may arise, so that general rules are difficult to lay down.

*Id.* comment d at 35. We do not believe the legislature in enacting A.R.S. §§ 40–360.42 and 40–360.43 made a clear declaration that eliminates any excuse for violation of these statutes. One purpose of the statutes is to protect persons working in the vicinity of high voltage lines from being electrocuted. While construing the statutes as imposing strict liability would advance this purpose, we can envision situations in which such a construction would be unjust. For example, it would not be just to hold strictly liable a subcontractor who had been assured by the general contractor that arrangements had been made with the public utility to de-energize the lines. We believe there is sufficient evidence here to raise a jury question as to whether Wilcoxson's violation of the statutes was excused under the circumstances of this case because of Phelps Dodge's conduct.

Monares' reliance on the case of *Sedona Self Realization Group v. Sun-Up Water*, 123 Ariz. 168, 598 P.2d 987 (1979) (person violating statute prohibiting excavation in a public street without first obtaining information on the location of underground facilities is strictly liable) is misplaced because the statutory scheme involved does, in fact, provide for excuses. *See* A.R.S. § 40–360.26(B).

### JUROR SAFFORD

We affirm the court's refusal to strike Safford for cause because we find no clear showing of an abuse of discretion. The trial court had the opportunity to observe the juror's demeanor and the tenor of her answers and was in the best position to determine whether she could render a fair and impartial verdict. *State v. Chaney*, 141 Ariz. 295, 686 P.2d 1265 (1984); *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978); *State v. Munson*, 129 Ariz. 441, 631 P.2d 1099 (App.1981).

Since we reverse the judgment against Wilcoxson and remand for new trial, we need not discuss his arguments regarding the failure to submit the issue of proximate cause to the jury.

We affirm the judgment against Phelps Dodge and reverse the judgment against Wilcoxson and remand for new trial.

LIVERMORE, P.J., and HOWARD, J., concur.