737 P.2d 1385

**TUCSON ELECTRIC POWER COMPANY, Third-Party Plaintiff/Appellee,**

v.

**SWENGEL–ROBBINS CONSTRUCTION CO., Third-Party Defendant/Appellant.**

No. 2 CA–CV 6001.

Court of Appeals of Arizona, Division 2, Department B.

May 21, 1987.

Kimble, Gothreau, Nelson & Cannon, P.C. by William Kimble and Stephen Kimble, Tucson, for third-party plaintiff/appellee.

Chandler, Tullar, Udall & Redhair by E. Hardy Smith, Tucson, for third-party defendant/appellant.

OPINION

LACAGNINA, Judge.

Swengel-Robbins Construction Company appeals from summary judgment granted in favor of Tucson Electric Power under the indemnity provisions of A.R.S. § 40–360.44(B), claiming that provision of the statute is unconstitutional because it may require Swengel-Robbins to indemnify TEP for its own negligence and because it violates the exclusive remedy provisions of the workers' compensation statutes. We affirm.

Vicki Lynn Zylks brought a wrongful death action as the surviving wife of Troy Adam Zylks, who was electrocuted while working as an employee of Swengel-Robbins when the boom of a crane operated by a co-employee came into contact with an energized overhead high voltage line while Zylks was in contact with the crane. Vicki brought the action against TEP and Marco Crane & Rigging Co., the manufacturer of the crane. TEP filed a third-party claim for indemnity pursuant to A.R.S. § 40–360.-44(B), which provides as follows:

§ 40–360.44. Violation

A. A person or business entity or agent of the person or business entity who violates this article may be subject to a civil penalty in an amount not to exceed one thousand dollars to be imposed by the court in favor of the state to be deposited in the general fund.

B. If a violation of this article results in physical or electrical contact with any high voltage overhead line, the person or business entity violating this article is liable to the public utility operating the high voltage overhead line for all damages to the facilities and all costs and expenses, including damages to third persons, incurred by the public utility as a result of the contact.

It is undisputed that Swengel-Robbins violated both § 40–360.42[1] and § 40–360.-43(A), the latter provision stating as follows:

§ 40–360.43. Activity in close proximity to lines; clearance arrangements; procedure; payment; notice

A. If any person or business entity desires to temporarily carry on any function, activity, work or operation in closer proximity to any high voltage overhead line than permitted by this article, the person or business entity responsible for performing the work shall promptly notify the public utility operating the high voltage overhead line. The person or business entity may perform the work only after satisfactorily mutual arrangements, including coordination of work and construction schedules, have been made between the public utility operat-

1. § 40–360.42. Activity near overhead line; safety restrictions

Unless danger against contact with high voltage overhead lines has been effectively guarded against as provided by § 40–360.43:

1. A person or business entity shall not, individually or through an agent or employee, require any other person to perform any function or activity upon any land, building, highway or other premises if at any time during the performance of any function or activity it is possible that the person performing the function or activity could move or be placed within six feet of any high voltage overhead line or if it is possible that any part of any tool or material used by the person could be brought within six feet of any high voltage overhead line during the performance of any function or activity.

2. A person or business entity shall not individually, through an agent or employee or as an agent or employee, operate any mechanical equipment or hoisting equipment, any part of which is capable of vertical, lateral or swinging motion within ten feet of any high voltage overhead line.

ing the lines and the person or business entity responsible for performing the work. Arrangements may include placement of temporary mechanical barriers to separate and prevent contact between material, equipment or persons and the high voltage overhead lines or temporary deenergization and grounding or temporary relocation or raising of the high voltage overhead lines.

Swengel-Robbins never notified TEP of its activity near the power line, and therefore, TEP did not make any arrangements to prevent the injury, such as the placement of temporary barriers, deenergization of the lines or temporary relocation of the lines.

■ Swengel-Robbins claims that the indemnity provisions of § 40–360.44(B) are unconstitutionally vague and fundamentally unfair to the extent that they may be construed to require Swengel-Robbins to indemnify TEP for TEP's own negligence even though it had no control over TEP's conduct. We note initially that these constitutional claims were raised only cursorily below in Swengel-Robbins' motion for reconsideration. Further, we find no constitutional infirmity in the statutory provision for indemnification where the person or business entity working adjacent to power lines has failed to give the requisite notice, even where the injury results in whole or in part from the utility's independent negligence. The statute represents a determination by the legislature that where work is being performed near power lines, the person or entity performing the work is in the best position to prevent injury—whether caused by its negligence or that of the utility—by giving notice so that appropriate protective measures may be taken. The imposition of liability for what is in effect Swengel-Robbins' own negligence in failing to give notice and thereby enabling TEP to take action to prevent injury is a reasonable legislative choice, and we find no constitutional violation. Swengel-Robbins' argument that the imposition of such liability is fundamentally unfair because it had no control over TEP's conduct misses the mark. Had it given the required notice and had TEP failed to take appropriate protective measures, no liability would have ensued and no obligation to indemnify would have arisen. Conversely, had notice been given and protective measures been taken, no injury would have occurred. Swengel-Robbins was not prevented by the statute from protecting itself. Given the unexcused violation of the statutes, *see Monares v. Wilcoxson*, 153 Ariz. 359, 736 P.2d 1171 (App.1987), we hold that the statutory language permitting recovery for "all damages ... to third persons, incurred by the utility" allows indemnification for the utility's own negligence. *See Moore v. Southwestern Electric Power Company v. Valmac Industries, Inc.*, 737 F.2d 496 (5th Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985).

■ Second, even assuming merit to Swengel-Robbins' constitutional argument, it utterly failed to present to the trial court any evidence of any independent negligence on TEP's part. Rather, it relied solely on Vicki Zylk's bare allegation in her complaint that her husband's death was the result of TEP's negligence. A statement that it is "conceivable" TEP officials "may" have known that it was operating in violation of the statute because the work was being performed in the vicinity of a TEP substation and that TEP employees traveled on the road adjacent to the work is not sufficient to avoid summary judgment.

■ We also disagree with Swengel-Robbins' claim that the indemnity statute violates the exclusive remedy provisions of the workers' compensation statutes, A.R.S. §§ 23–906(A) and 1022(A) and article XVII, § 8 of the Arizona Constitution. We find no conflict between, on the one hand, the exclusive remedies provisions of the workers' compensation statute and the interests it seeks to protect, and, on the other hand, the indemnity provisions and the clear legislative intent behind the enactment of the High Voltage Power Lines and Safety Restrictions Act. We agree with other jurisdictions which have found no conflict between the two statutory schemes. In *Houston Lighting & Power Co. v. Eller Outdoor Advertising Co. of*

*Texas,* 635 S.W.2d 133 (Texas App.1982), the court dealt with a statute almost identical to our own act and held that the indemnity action was not "on account of" injury to or death of the employee but was an action arising from a separate breach of the construction company's statutory duty under the provisions of the act. The court also agreed that the two statutes could be harmonized in this way.

This reasoning is consistent with Arizona case law distinguishing allowable third-party claims from those arising out of the injury or death or employment relationship and, therefore, prohibited by the exclusive remedy provisions of the statute. The statute limits the employee's options regarding employer liability, but does not limit the employer's liability based on a legal relationship with a third party. This relationship is created by the statute establishing the distance requirements for equipment and persons. *See Travelers Insurance Company v. Panama-Williams, Inc.,* 424 F.Supp. 1156 (N.D.Okla.1976), *aff'd,* 597 F.2d 702 (10th Cir.1979).

The court in *Houston Lighting* also concluded that the utility safety statute would be meaningless if the workers' compensation statute acted as a bar to its indemnity action created under that statute, especially where "the clear intent of the legislature was to hold an employer liable for violations of the Public Utilities Act." 635 S.W.2d at 135. That intent is also made clear in our own statute, and we agree that to bar the indemnity action would frustrate the legislative intent. To allow the indemnity action harmonizes the two statutory schemes. *Shirley v. Superior Court in and for the County of Apache,* 109 Ariz. 510, 513 P.2d 939 (1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472 (1974).

Affirmed.

LIVERMORE, P.J., and FERNANDEZ, J., concur.