A02A1406, A02A1407. WILLIAMS v. MITCHELL COUNTY ELECTRIC MEMBERSHIP CORPORATION (two cases).
(566 SE2d 356)

ELDRIDGE, Judge.

These are appeals from the grant of a judgment notwithstanding the verdict for the estate and in a wrongful death action for electrocution of a farm worker who tried to disengage a neutral wire from a cotton picker and came within ten feet of a high-voltage line. The trial court granted the motion, because the court contended that the High-voltage Safety Act was violated and that the deceased assumed the risk of injury. The jury rejected the affirmative defense of assumption of risk, and there was no evidence to show that the deceased had both objective and subjective appreciation of the danger; therefore, the trial court erred. However, the 1992 High-voltage Safety Act immunizes the power company's negligence of omission and commission in placement and maintenance of such lines when there had been no notice given. Thus, the Act applied barring liability, because there had been no notice.

In 1949, the Mitchell County Electric Membership Corporation erected a high-voltage power line above ground along Strawberry Road. The power line consisted of two copper wires, strung one above the other; the lower was neutral and the higher was the phase wire. Each wire was a single strand of number six gauge copper wire, which was the smallest used by Mitchell EMC; however, beginning

over 70 years ago, Mitchell EMC had gone to the general use of a thicker, braided aluminum wire to avoid stretching. Over time, a single strand of copper wire will stretch, causing greater sagging of the power lines. The poles were placed over 495 feet apart, causing a sag so that the top line was nineteen feet two inches instead of at least twenty-two feet above the ground, and the neutral was at twelve feet six inches instead of eighteen feet as required by the National Electric Safety Code. Mitchell EMC followed the NESC standards as testified to by Donnie Stanfill, engineering technician, and Alex Rex Hutto, operations superintendent, for Mitchell EMC. To avoid sagging, NESC required shorter spans, resulting in higher wires; the pole placement had been violated here. Thus, this site failed to meet the minimum NESC requirements at the time of death for pole placement, power line height, and maintenance.

Further, Mitchell EMC kept no records of the clearance over the field and did not measure the wire after it had fully stretched. It never had its employees inspect or maintain this span after the stringing of the wires in 1949. Mitchell EMC serves 14 rural counties with 4,800 miles of power lines. Mitchell EMC was aware that its lines crossed fields where farm equipment was operated. Other power companies in Georgia were aware that larger equipment was used in farming and began to raise the lines as early as the 1960s; however, Mitchell EMC did not do this.

On December 15, 1996, Donald Wyatt Williams, the deceased, drove a cotton picker, which was fifteen feet high, into the field from Strawberry Road and commenced picking cotton, four rows at a time, going west across the field toward the power lines; this required him to keep his attention on the rows at all times in order to keep the picker straight with the rows. Before he completed the first four rows, the neutral wire, sagging twelve feet from the ground, snagged on a light on the side of the picker's collection basket. Williams climbed up onto the second step of the basket of the cotton picker and attempted to remove the neutral wire. The other operators saw Williams near the wires on top of the cotton picker but did not realize that he was in any danger until he was electrocuted. Williams did not appear to be aware of any danger. Looking at the power lines up close, it was not observable whether there was insulation on the wires. Williams appeared to have been shocked, lost his balance, and stretched out his arm to regain his balance when he was electrocuted.

The coroner found that Williams died from electrocution. Plaintiff's expert witness testified that the line carried 7,200 volts. There was no evidence that anyone had given the required notice of work within ten feet of the high-voltage lines.

1. Plaintiff contends that the trial court erred in granting a j.n.o.v. for assumption of the risk. We agree.

The evidence established clearly and palpably that Mitchell EMC had negligently maintained its high-voltage lines too close to the ground and the poles too close together, and this was contrary to the NESC and the practice of both Mitchell EMC and other power companies. "A power company is charged with the duty of exercising ordinary care in the construction and maintenance of its wires, poles, transformers and equipment." *Collins v. Altamaha Elec. Membership Corp.*, 151 Ga. App. 491-492 (1) (A) (260 SE2d 540) (1979). A power company must maintain its lines "at such a location as not to injure persons who might be reasonably expected to come in contact with such lines." *Carden v. Ga. Power Co.*, 231 Ga. 456-457 (202 SE2d 55) (1973).

For the defense of assumption of a known risk of danger, the defendant must prove not only that the plaintiff knew of the danger but also that the plaintiff appreciated such danger. *North Ga. Elec. Membership Corp. v. Webb*, 246 Ga. App. 316, 319-320 (2) (540 SE2d 271) (2000). A person cannot assume a risk about which he lacks knowledge and fails to appreciate. *Roberts v. King*, 102 Ga. App. 518, 521 (116 SE2d 885) (1960). Generally, assumption of the risk is a factual issue to be determined by a jury and not by the trial court. *North Ga. Elec. Membership Corp. v. Webb*, supra at 319; *Stegall v. Central Ga. Elec. Membership Corp.*, 221 Ga. App. 187, 190 (2) (470 SE2d 782) (1996). "As a general rule a person of ordinary intelligence, a layman in the field of electricity[,] is not credited with information concerning the dangerous character of wire placed in a position or strung at heights which indicate the wire is harmless." *Planters Elec. Membership Corp. v. Burke*, 98 Ga. App. 380, 388 (1) (105 SE2d 787) (1958).

The Supreme Court has repeatedly made clear that the knowledge necessary for the defense of assumption of the risk means not only actual knowledge but also subjective knowledge of the danger.

> In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Knowledge of the risk is the watchword of assumption of the risk, and means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plain-

tiff's comprehension of general, non-specific risks that might be associated with such conditions or activities. As stated by Dean Prosser: In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from *a known risk arising from what the defendant is to do or leave undone.*

(Punctuation and footnotes omitted; emphasis in original.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996); accord *Muldovan v. McEachern*, 271 Ga. 805, 807-808 (2) (523 SE2d 566) (1999) (wilful or wanton conduct does not bar assumption of the risk defense). "[T]he standard to be applied in assessing an assumption of the risk defense is a subjective one, geared to the particular plaintiff and his situation, rather than that of a reasonable person of ordinary prudence who appears in the completely separate defense of contributory negligence." (Punctuation and footnote omitted.) *Muldovan v. McEachern*, supra at 808 (2).

The record is devoid of even a scintilla of evidence that Williams had subjective knowledge of the danger and consciously encountered the danger of electrocution from these low hanging wires. The evidence is to the contrary in that the eyewitnesses had no subjective knowledge or appreciation of the risk and in their lay opinion, and the jury was authorized to find that neither did the deceased have subjective knowledge and appreciation of the risk. Therefore, the trial court erred in granting a j.n.o.v. on the grounds of assumption of the risk.

2. Plaintiff contends that the trial court erred in finding that the 1992 High-voltage Safety Act barred recovery, requiring the j.n.o.v. We are constrained to disagree, because the 1992 Act drastically changed the liability of power companies when no notice was given.

When the General Assembly passed Ga. L. 1960, pp. 181, 185 (OCGA § 46-3-30 et seq.), the Act had one purpose: to make it safer to work around "high-voltage lines." The caption of the Act stated: "to provide the precautions to be taken in the proximity of high-voltage electric lines for the prevention of accidents." Id. at 181. However, the caption never mentioned the limitation of liability or immunity, and in fact § 10 expressly stated that "[n]othing in this Act shall be construed or applied as limiting or reducing the duty or degree of care now applicable to owners or operators of such high-voltage lines with respect to damage or loss to person or property." Id. at 185. A condition precedent for a power company coming within the ambit of the 1960 Act was that the high-voltage lines be erected and maintained within the industry-recognized standards for high-voltage lines set

forth in NESC. Where the power company either erected or maintained power lines that were not " 'otherwise properly located and maintained,' " failure to give notice of work within close proximity did not bar recovery. *Malvarez v. Ga. Power Co.*, 250 Ga. 568, 569 (300 SE2d 145) (1983); accord *Savannah Elec. &c. Co. v. Holton*, 127 Ga. App. 447, 450-452 (3) (193 SE2d 866) (1972).

> In our view the power company's liability for injury resulting from contact with an uninsulated high tension wire arises only when it is reasonable for the company to foresee that contact might be made with its uninsulated wire, i.e., that there is a reasonably foreseeable danger of harm to [the deceased] created by [the power company's] wires.

(Citations and punctuation omitted.) *Butler v. Ga. Power Co.*, 183 Ga. App. 144, 145 (358 SE2d 266) (1987).

> A power company is charged with the duty of exercising ordinary care in the construction and maintenance of its wires, poles, transformers and equipment. Ordinary care is that reasonable care and caution which an ordinary cautious and prudent person would exercise under the same or similar circumstances. The scope of this duty is dependent on the attendant circumstances.

(Citations omitted.) *Collins v. Altamaha Elec. Membership Corp.*, supra at 491-492 (1) (A); accord *Leonardson v. Ga. Power Co.*, 210 Ga. App. 574, 575-576 (436 SE2d 690) (1993); *Buckner v. Colquitt Elec. Membership Corp.*, 206 Ga. App. 69, 70 (424 SE2d 299) (1992). Thus, "[h]igh voltage lines must be maintained in such a manner and at such a location as not to injure persons who might be reasonably expected to come in contact with such lines." (Citation and punctuation omitted.) *Beamon v. Ga. Power Co.*, 199 Ga. App. 309, 311 (404 SE2d 463) (1991); accord *Leonardson v. Ga. Power Co.*, supra at 576.

"The kinds of activities intended to be covered under the [1960] Act are not random or casual exposures to lines." (Citation and punctuation omitted.) *Southern Orchard Supply v. Boyer*, 221 Ga. App. 626, 628 (472 SE2d 157) (1996); see also *Johnson v. Richardson*, 202 Ga. App. 470 (414 SE2d 698) (1992); *Savannah Elec. &c. Co. v. Holton*, supra at 451. Thus, the 1960 Act applied to "those businesses, whether giant corporations or one-man concerns, whose usual activities would foreseeably bring their employees within proximity to . . . voltage lines." *Savannah Elec. &c. Co. v. Holton*, supra at 451 (3); accord *Southern Orchard Supply v. Boyer*, supra at 628.

Under the 1960 Act, foreseeability of plaintiff's acts of work leading to injury from contact with high-voltage lines was uniquely a jury question. *Three Notch Elec. Membership Corp. v. Bush*, 190 Ga. App. 858, 859 (1) (380 SE2d 720) (1989) (two employees of commercial grain operation augering grain struck power pole); *Habersham Elec. Membership Corp. v. Dalton*, 170 Ga. App. 483 (317 SE2d 312) (1984) (farmer cleaning chicken feed with a hoe with an attached conduit pipe touched power line); *Collins v. Altamaha Elec. Membership Corp.*, supra at 491 (farm worker struck guy wire of utility pole with farm equipment); *Gilbert v. Ocmulgee Elec. Membership Corp.*, 100 Ga. App. 638 (112 SE2d 207) (1959) (farmer cleaning well with long pipe contacted power line).

However, Ga. L. 1992, pp. 2141, 2147 (OCGA § 46-3-30 et seq.) radically changed the liability of power companies for negligent erection or maintenance of high-voltage lines, which causes injury to anyone working in the area of the high-voltage power lines without notice. The caption of the 1992 Act stated some of the purposes to be: (1) "to change the provisions relating to the effect of such laws on duty or degree of care applicable to owners and operators of high-voltage lines"; and (2) "to provide limitations on liability." Now, the 1992 Act, § 10 (OCGA § 46-3-39) of Ga. L. 1960, pp. 181, 185, severely limited that which formerly read: "[n]othing in this Act shall be construed or applied as limiting or reducing the duty or degree of care now applicable to owners . . . of such high-voltage lines with respect to damage or loss to person or property." Under the 1992 Act, OCGA § 46-3-39 (a) now limited subsection (b); (a) currently reads:

[any] owner or operator of high-voltage lines *shall not be liable* for damage or loss to person or property resulting from work within ten feet of high-voltage lines unless notice has been given as required by Code Section 46-3-34 and the owner or operator of the high-voltage line has failed to comply with the provisions of Code Section 46-3-33 [(a)].

(Emphasis supplied.) See *Preston v. Ga. Power Co.*, 227 Ga. App. 449, 455 (2) (489 SE2d 573) (1997). Now, OCGA § 46-3-39 (b) (formerly § 10 of the 1960 Act) reads: "[e]xcept as provided in subsection (a) of this Code section, nothing in this part shall be construed or applied so as to limit or reduce the duty or degree of care applicable to owners or operators of high-voltage lines with respect to damage or loss to person or property." (Emphasis supplied.) See also *Preston v. Ga. Power Co.*, supra at 454-456. The 1992 Act "specifically provided the owner-operator with immunity from liability if notice was not given as required by OCGA § 46-3-34. The 1992 amendment, therefore, effectively overruled *Malvarez*. See *Preston v. Ga. Power Co.*, [supra

at 454-456]." *Santana v. Ga. Power Co.*, 269 Ga. 127, 128 (2) (498 SE2d 521) (1998). This was a radical legislative departure from the prior statute.

Further, now OCGA § 46-3-32 (3) applies to "the person actually doing the work," so that such worker must give notice if the owner, contractor, or subcontractor does not give notice. Under OCGA § 46-3-32 (6), the 1992 Act redefined "work" so broadly that even occasional or casual work came within the Act. Therefore, failure to give notice for anyone doing any work within ten feet of a power line, casual worker or not, confers immunity to the power company under the Act. *Santana v. Ga. Power Co.*, supra at 128; *Preston v. Ga. Power Co.*, supra at 454-456; see also generally *Flint Elec. Membership Corp. v. Ed Smith Constr. Co.*, 270 Ga. 464, 465 (511 SE2d 160) (1999) (employer who failed to give notice of worker injured by high-voltage line must indemnify power company despite workers' compensation); *Ga. Power Co. v. Franco Remodeling Co.*, 240 Ga. App. 771, 772 (2) (525 SE2d 152) (1999) (power company immune to liability without notice and is entitled to indemnity). Thus, the trial court did not err in granting a j.n.o.v. to Mitchell EMC in both cases.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED MAY 24, 2002 —
RECONSIDERATION DENIED JUNE 7, 2002 — ▆▆▆▆▆▆▆

*Burge & Wettermark, Frank T. Burge, Frank C. Vann*, for appellants.

*McNatt, Greene & Thompson, Hugh B. McNatt, Richard S. Thompson, James C. Brim, Jr., John W. Bass, Sr.*, for appellee.