598 P.2d 987

**SEDONA SELF REALIZATION GROUP, an Arizona Corporation, Lester Levenson and Tom Hartman, Appellants,**

v.

**SUN–UP WATER CO., an Arizona Corporation, Appellee.**

No. 14172.

Supreme Court of Arizona, In Banc.

Aug. 3, 1979.

Leibsohn, Eaton, Gooding & Romley, P. C., by Jeffery M. Proper, Phoenix, for appellants.

Ronald C. Ramsey, P. C., Cottonwood, for appellee.

## OPINION

CAMERON, Chief Justice.

This is an appeal by the defendants Tom Hartman, Lester Levenson, and the Sedona Self Realization Group (SSRG) from a judgment by the trial court awarding the plaintiff, Sun-Up Water Company, $3,000 in damages and attorney's fees together with a permanent injunction against any further interference with Sun-Up's water pipeline by the SSRG. We have jurisdiction pursuant to Rule 19(e) of the Rules of Civil Appellate Procedure, 17A A.R.S.

We need answer only one question on appeal: Did the excavation and severance of water lines by SSRG violate the provisions of A.R.S. § 40–360, et seq.?

The facts necessary for a determination of this matter on appeal are as follows. In 1972, Eugene Munson acquired approximately fourteen acres of land in Sedona, Arizona. The property was separated into fourteen parcels. Three parcels were purchased by the Sedona Self Realization Group (SSRG), an Arizona corporation founded by Mr. Lester Levenson. The rest were purchased by individuals, most of whom were members of the SSRG.

In 1973, Munson contracted for the installation of a water line to serve the separate parcels. The pipeline was placed in the public easement previously designated by Munson and which was already occupied by telephone and electric lines. At one point, the water pipes left the designated easement to avoid a tree that was on the easement. At that point, which was near the connection between the Munson pipeline and the Sun-Up Water system, the pipes ran under the property of Emelia Ganowski.

Sun-Up, as requested by SSRG and other individuals who owned lots, began to provide temporary water service in mid-October 1973 through the pipeline placed by Munson. However, Sun-Up was unable to reach agreement regarding a "line extension agreement" which was required before the water service could become permanent. Since no agreement was reached, Sun-Up ceased its temporary service in January of 1974. The SSRG then proceeded to provide its own water by digging a well and using the same pipelines placed by Munson and previously used by Sun-Up.

On or about 5 February 1975, defendant Tom Hartman, a member of SSRG, began to excavate on the parcel of land owned by Emelia Ganowski and which was outside

the utility easement. The connection was found on the Ganowski lot and outside the utility easement. Mr. Richard Baxter, president of the Sun-Up Water Company, witnessed this excavation. The pipe was cut and capped on the SSRG end, but the Sun-Up end was left uncapped. Shortly after the severance, other Sun-Up customers began complaining that their water was contaminated.

On 7 February 1975, Sun-Up filed the instant lawsuit seeking a temporary restraining order and injunction against the defendants to prevent any future excavation of Sun-Up water lines, together with other damages. The trial judge signed a temporary restraining order and order to show cause allowing Sun-Up to "do whatever is necessary to the pipe to avoid potential health hazards" and enjoined the defendant from interfering with Sun-Up in doing this. Sun-Up was able to cap its end of the line on 9 February 1975. After trial on the merits, the trial court found the defendants were in violation of A.R.S. § 40–360.22, et seq., and awarded plaintiff damages and an injunction. Defendants appeal.

## STATUTORY VIOLATIONS

The SSRG contends that the trial court erred in finding that the excavation and severance of the pipelines constituted violations of A.R.S. §§ 40–360.22, –360.23, –360.-24 and –360.28. The statutes read as follows:

"A. A person shall not make or begin any excavation in any public street, alley, right-of-way dedicated to the public use or utility easement without first obtaining information concerning the possible location of any underground facility from each and every public utility, municipal corporation or other person having the right to bury such underground facilities within the public street, alley, right-of-way or utility easement." A.R.S. § 40–360.22.

"Obtaining information as required by this article does not excuse any person making any excavation from doing so in a careful and prudent manner, nor shall it excuse such persons from liability for any damage or injury resulting from his negligence." A.R.S. § 40–360.23.

"In the event of any damage to or dislocation of any underground facility in connection with any excavation the person responsible for the excavation operations shall immediately notify the owner of such facility." A.R.S. § 40–360.24.

A.R.S. § 40–360.28 provides for the imposition of a civil penalty and attorney's fees for violation of the statute.

■ From a reading of these statutes, A.R.S. §§ 40–360.21 to 40–360.29, it is apparent that they were designed to provide a cause of action against those people who carelessly or negligently excavate in an easement to the damage of a utility located therein. §§ 40–360.23 and 40–360.28 emphasize the intent of the legislation—if a person does not obtain information as to the easement then he is liable for damages. If a person obtains the necessary information and excavates in a careful and prudent manner, he can then escape liability for damages. The statute, in effect, provides for strict liability for damages as to those who excavate first and determine later the location of the utilities within the easement.

■ We do not believe the statute applies. To begin with, the actual cutting of the pipe was done not in the easement but on private property outside the easement. The statute is limited to any "public street, alley, right-of-way * * * or utility easement * * *." A.R.S. § 40–360.22. The pipe was cut outside the easement and was therefore out from under the statute.

■ But even if the excavation and cutting were done inside the easement, we still do not believe the statute would apply. Both parties had all the notice required by the statute as to the location of the lines. SSRG dug at the exact place it left the easement and the owner of Sun-Up Water Company, though protesting, watched part of the excavation. There was no negligent or careless damaging of the water line. Defendants deliberately and with knowledge of the exact location of the pipe, excavated and severed the pipe, capping one end.

The only question before the trial court was: Did defendants have the right to cut the pipe in the manner that they did? If they did not have the right to cut the pipe, then they should be liable for wrongfully cutting the pipe and the resulting damages. If they did have the right to cut the pipe, there remains only the question as to liability for failing to cap the water company's end of the pipe. These causes of action, however, are not based upon the statute.

Since the matter was tried and judgment rendered on the basis of the statute, the judgment will be set aside. The matter is reversed and remanded for a new trial to determine if the pipe was wrongfully cut and negligently not capped, and the damages, if any, resulting therefrom.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.