18 P.3d 176

Stanley and Jennifer GUNNELL,
husband and wife, Plaintiffs–
Appellants,

v.

ARIZONA PUBLIC SERVICE COM-
PANY, an Arizona corporation,
Defendant–Appellee.

No. 1 CA–CV 99–0510.

Court of Appeals of Arizona,
Division 1, Department B.

March 8, 2001.

Jones & Rosenberg by Bruce E. Rosenberg, Prescott, Attorneys for Plaintiffs–Appellants.

Gaona Moore, P.C. by David F. Gaona and Bruce Gardner, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

GARBARINO, Judge.

¶ 1 Stanley and Jennifer Gunnell appeal the trial court's grant of summary judgment in favor of Arizona Public Service Company (APS). The trial court ruled that, pursuant to the Underground Facilities Act, Ariz.Rev. Stat. Ann. (A.R.S.) §§ 40–360.21 to 40–360.32 (1996 & Supp.1999), the Gunnells are liable for damage to APS's underground facility, APS is entitled to indemnity for damages it must pay to James Knox, and the Gunnells must pay APS's attorneys' fees incurred as a result of APS's defense of this action. For the following reasons, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On an appeal from an order granting summary judgment, we view the facts in a light most favorable to the appellant. *Pioneer Annuity Life Ins. Co. v. Rich,* 179 Ariz. 462, 464, 880 P.2d 682, 684 (App.1994).

¶ 3 The Gunnells own an excavating business in Cottonwood, Arizona, known as Gunnell Construction. Mr. Gunnell has worked in the excavation trade for more than twenty years. In July 1995, the Gunnells contracted to do the excavation work for the installation of a sewer line crossing Mingus Avenue in Cottonwood. Before beginning the excavation work, Mr. Gunnell met with the Cottonwood City Engineer to determine the location of utility easements. He also called the local Blue Stake Center to notify local utilities that he would be excavating in the area so that they could physically mark the location of their underground facilities. APS did not promptly mark its facilities in the area, and Mr. Gunnell called the Blue Stake Center three additional times specifically to request that APS come to the site and properly mark its facilities.

¶ 4 After APS's last visit to the site, Mr. Gunnell believed that APS's blue staking was complete and he began excavating the site. While excavating the site, Mr. Gunnell encountered an unmarked, unidentified galvanized steel pipe in the path of his trench. Because Mr. Gunnell had never before encountered an electric line encased by steel piping, he believed the pipe to be a water line. He therefore contacted both local water companies in the Cottonwood area. Both water companies denied ownership of the line. Based on this information and his years of experience with abandoned lines in the Cottonwood area, Mr. Gunnell concluded that the lines were abandoned, and he proceeded with the excavation. Mr. Gunnell's co-worker, Jim Knox, cut into the pipe and an explosion occurred, seriously and permanently injuring both Mr. Gunnell and Mr. Knox.

¶ 5 Mr. Gunnell informed APS that he had cut into an unmarked, unidentified electric line. APS responded that if the line was encased in a steel pipe, it could not possibly have belonged to APS. APS later admitted that the electric line was theirs and that the employee in charge of blue staking had "just missed it."

¶ 6 The Gunnells sued APS, alleging that APS negligently installed the electric line, failed to warn of the line's location, and inadequately blue-staked the area, causing injuries to Mr. Gunnell. Mr. Knox also sued APS in a separate lawsuit. APS filed an answer denying liability, and APS later amended its answer to assert a counterclaim alleging that the Gunnells were liable for damage to the APS electric line and that the Gunnells were required to indemnify APS for

all expenses and damages incurred in defense of the lawsuit filed by Mr. Knox. APS also sought an award of costs and attorneys' fees.

¶ 7 APS moved for summary judgment on all counts of the complaint and counterclaim. The trial court held a hearing in April 1999, and in a signed minute entry dated May 28, 1999, the court ruled as follows:

> When ... Gunnell came across the unmarked, unidentified steel pipe, he was required to notify either the owner of the underground facility or an organization designated by the owner. This, [he] failed to do. He contacted two water companies who disclaimed any ownership. However, he failed to re-contact the Blue Stake Center and also failed to contact APS. It is Plaintiff's failure to contact the Blue Stake Center after he encountered the unmarked, unidentified pipe which necessitates this result, and the failure of APS to have originally identified the pipe is not relevant under A.R.S. § 40–360.23B.

After considering APS's request for costs and attorneys' fees and the Gunnells' objection to the form of judgment presented by APS, the trial court entered a formal order granting judgment in favor of APS and awarding APS its costs and attorneys' fees. The Gunnells filed a timely notice of appeal.

## ISSUES

1. Did Mr. Gunnell violate the Underground Facilities Act?
2. Does the Underground Facilities Act allow application of comparative negligence principles?

## DISCUSSION

¶ 8 In reviewing an order granting summary judgment, "we determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993). We also review de novo the trial court's construction of statutes. *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 163, 920 P.2d 41, 43 (App.1996).

¶ 9 Arizona Revised Statutes Annotated section 40–360.22 (Supp.1999) provides in relevant part as follows:

> A. A person shall not make or begin any excavation in any public street, alley, right-of-way dedicated to the public use or utility easement ... without first determining whether underground facilities will be encountered, and if so where they are located from each and every public utility, municipal corporation or other person having the right to bury such underground facilities....
>
> B. .... Upon receipt of inquiry or notice from the excavator, the owner of the facility shall respond as promptly as practical, but in no event later than two working days, by marking such facility with stakes, paint or in some customary manner. No person shall begin excavating before the location and marking are complete or the excavator is notified that marking is unnecessary.
>
> ....
>
> I. The owner of an underground facility shall notify the excavator whether the facility is active or abandoned. For an underground facility abandoned after December 31, 1988 ... the owner of the facility may not advise ... the excavator that a facility or portion of a facility is abandoned unless the owner has verified ... that the facility or portion is actually abandoned and not merely inactive. For all other abandoned or apparently abandoned underground facilities, each one-call notification center shall establish a method of providing personnel from a facility owner qualified to safely inspect and verify that the facility is abandoned or active and a method for reimbursing the verifying facility owner for the costs incurred.... For all purposes under this article, a[n] ... excavator or other person subject to this article may not ... treat an underground facility [a]s abandoned, unless the facility has been verified as abandoned pursuant to this subsection.

Section 40–360.23 (1996) provides:

> A. Obtaining information as required by this article does not excuse any person

making any excavation from doing so in a careful and prudent manner. . . .

B. After markings have been made pursuant to § 40–360.22, an excavator shall notify either the owner of an underground facility or an organization designated by the owner if the excavator encounters an underground facility that has not been located and marked or has been marked in the wrong location.

¶ 10 Section 40–360.26 (1996) addresses liability for damage to underground facilities as follows:

A. If any underground facility is damaged by any person as a result of failing to obtain information as to its location, failing to take measures for protection of the facilities or failing to excavate in a careful and prudent manner as required by this article, the person is liable to the owner of the underground facility for the total cost of the repair of the facility.

Section 40–360.28 (Supp.1999) provides:

B. If a violation of this article results in physical contact with an underground facility, the violator is liable to the owner of the facility for all damages to the facilities and costs, expenses and damages to third parties incurred by the owner of the facility as a result of the contact.

C. If the owner or operator fails to locate or incorrectly locates the underground facility, pursuant to this article, the owner or operator becomes liable for resulting damages, costs and expenses to the injured party.

Finally, the statute provides that the prevailing party in actions brought to impose liability under the Act is entitled to recover reasonable attorneys' fees. A.R.S. § 40–360.27 (1996).

## I. *Violation of the Underground Facilities Act*

¶ 11 The Gunnells contend that, because APS failed to properly mark its underground lines, even after Mr. Gunnell repeatedly requested that it do so, APS is liable for the resulting damages pursuant to section 40–360.28(C). APS asserts that, because Mr. Gunnell failed to notify APS when it encountered the unidentified pipe, the Gunnells are liable pursuant to sections 40–360.23(B) and 40–360.28(B).

¶ 12 In construing a statute, we first consider "the statutory language; if the language is plain and unambiguous, we will apply it without resorting to other rules of construction. The individual provision at issue, however, must be considered in the context of the entire statute of which it is a part." *Arizona Dep't of Econ. Sec. v. Superior Court*, 186 Ariz. 405, 408, 923 P.2d 871, 874 (App.1996) (citations omitted). If the statutory language is subject to different interpretations, we will interpret the provision at issue so that it harmonizes with other provisions of the same statute and with the legislative purpose. *Saenz v. State Fund Workers' Comp. Ins.*, 189 Ariz. 471, 474, 943 P.2d 831, 834 (App.1997).

¶ 13 Here, the statutory language is clear and unambiguous. The statute provides that after a site has been marked pursuant to section 40–360.22, "if the excavator encounters an underground facility that has not been located and marked," he "shall notify ... the owner." A.R.S. § 40–360.23(B). Additionally, the statute provides that an "excavator ... may not ... treat an underground facility [a]s abandoned, unless the facility has been verified as abandoned pursuant to [the statutory procedure]." A.R.S. § 40–360.22(I). Thus, the statute clearly provides that, upon encountering an unmarked underground facility, the excavator must contact the owner of the facility. He cannot treat the facility as abandoned unless and until he has complied with the statutory procedure for verifying that a facility has been abandoned.

¶ 14 The Gunnells contend that Mr. Gunnell complied with the statute because he repeatedly requested that APS mark its lines and because he excavated in a careful and prudent manner. However, the statute expressly recognizes that even after an area has been marked, some unmarked facilities may remain, and it places the burden on the excavator to either notify the owner of the facility or verify that the facility is abandoned. A.R.S. § 40–360.22(I).

¶ 15 The Gunnells argue that Mr. Gunnell complied with the requirement to notify the apparent owner of the steel pipe based on its appearance. Section 40–360.23(B) requires that the excavator notify "the owner" of the unmarked facility. By its plain language, this section requires notification of the actual owner, not merely a potential owner. When the water companies disclaimed ownership, Mr. Gunnell was required to contact either other utilities to determine who, in fact, owned the pipe, or the Blue Stake Center and follow its established method of verifying whether the pipe was abandoned.[1] A.R.S. § 40–360.22(I). Section 40–360.22(I) specifically prohibits "treat[ing] the facility as abandoned" without following the verification procedures required by the statute. Thus, Mr. Gunnell violated the statute.

¶ 16 Section 40–360.28(B) provides that a person who violates the statute is liable to the owner for damages to the underground facility and for any damages the owner must pay to third parties injured by contact with the underground facility. The trial court correctly concluded that the Gunnells were liable to APS for both the damage to the pipe and any damages paid or awarded to James Knox.

¶ 17 The Gunnells contend that this interpretation of the statute renders meaningless section 40–360.28(C), which provides for owner liability for damages resulting from the owner's failure to locate an underground facility. However, we conclude that section 40–360.28(C) can be read in harmony with the previously discussed sections of the statute.

¶ 18 Section 40–360.28(C) provides that if the owner fails to locate an underground facility, the owner "becomes liable for resulting damages, costs and expenses to the injured party." Section 40–360.28(B) provides that a person whose violation of the statute results in contact with an underground facility is liable to the owner for damages to the facility, as well as for damages to third parties. Thus, we read the statute as a whole to mean that if an owner fails to properly mark a facility, the owner becomes liable to the injured party for damages resulting from such failure. If an excavator has complied with the statute in all respects, but has nevertheless been damaged because of an encounter with an unmarked underground facility, section 40–360.28(C) entitles the excavator to collect from the owner for any damages incurred due to the owner's failure to properly mark the underground facility. However, when the excavator has encountered an underground facility without injury, but thereafter violates section 40–360.28(A) or (B), the excavator is liable to the owner both for any resulting damage to the facility and for any resulting damages the owner must pay to injured parties under section 40–360.28(C).

¶ 19 Finally, the Gunnells cite *Sedona Self Realization Group v. Sun–Up Water Co.,* 123 Ariz. 168, 598 P.2d 987 (1979), as support for their contention that the statutes "were designed to provide a cause of action against those people who carelessly or negligently excavate in an easement," and that "[i]f a person obtains the necessary information and excavates in a careful and prudent manner, he can then escape liability for damages." *Id.* at 170, 598 P.2d at 989. The Gunnells contend that Mr. Gunnell excavated carefully and prudently, and therefore they should not be liable for damages. However, upon discovering the unmarked pipe, Mr. Gunnell failed to "obtain the necessary information" regarding whether it was abandoned. It is not negligent excavation that renders the Gunnells liable, but Mr. Gunnell's failure to ascertain the pipe's true owner that is the basis for their liability. The *Sedona* court was correct when it reasoned that sections 40–360.23 and 40–360.28 predi-

1. APS's statement after the explosion, that the facility could not be an electric line if it was in a steel pipe, is irrelevant. Even if APS had made this statement before Mr. Gunnell cut into the pipe, Mr. Gunnell was still required to comply with the statutory procedure for verifying whether the pipe was abandoned, rather than simply treating it as abandoned based on his own experience and/or the disclaimers of some potential owners of the pipe. In this regard, we agree with the Gunnells' statement in the reply brief that the "question is not what APS personnel *would have done* if they had been contacted." The question is whether Mr. Gunnell complied with the statute.

cate liability on the failure of a party to investigate once it is placed on notice of the possible existence of an underground facility.[2] *See id.*

¶ 20 Because Mr. Gunnell violated the statute by failing to notify the owner of the unmarked pipe and/or failing to comply with the procedures for verifying whether the unmarked pipe was abandoned before cutting into it, the Gunnells are liable to the owner of the pipe, APS, for the resulting damage to both the pipe and the injured parties.

## II. *Comparative Negligence*

¶ 21 The Gunnells next contend that the trial court erred by concluding that APS's initial failure to identify the pipe was irrelevant to the Gunnells' liability under section 40–360.23(B). The Gunnells contend that section 40–360.23(C) demonstrates that the legislature intended that either the utility company's liability would supplant the excavator's liability when the utility failed to properly mark its facilities, or the negligence of the utility company and the excavator must be compared, each bearing a share of the liability.

¶ 22 We have already rejected both of these readings of the statute in section I, above. However, the dissent believes that our interpretation of the Underground Facilities Act subordinates one liability section of the Act to the other, where the legislature did not intend such a result. *Post* at 388–389, ¶¶ 32–33, 18 P.3d at 182–83. Logically, though, that is precisely what the legislature intended to do as evidenced by the clear language that the legislature used. The respective liability of excavators and facilities owners operates to the exclusion of the other. To achieve harmony when construing these liability provisions, we must look to the timing of the parties' actions in relation to the language of the statutes. If an owner or the owner's agent fails to locate, mark, or identi-

fy a facility after a request, and an excavator encounters the facility causing damage, liability under the Act rests with the owner of the facility. If, however, the excavator encounters an unmarked facility without damaging it, but elects to continue to excavate without further investigation, the excavator does so at the excavator's own peril and liability under the Act falls squarely on the excavator's shoulders. The legislature's choice of words and language is what shifts potential liability from one party to the other party.

¶ 23 Next, the dissent argues that our interpretation of the Act's liability provisions is inconsistent with Arizona's common law rules governing intervening and superceding causation. *Post* at 390, ¶ 41, 18 P.3d at 184. The dissent's observation is correct, but for one key distinction. The legislature determined, by writing the Act as it did, that the acts or omissions of either a facilities owner or excavator constitute something similar to the common law's intervening and superceding cause. But because the causation element for liability for the damages in this case is governed by statute, rather than common law, we need not defer to and endeavor to apply the common law's rules governing intervening and superceding causation.

■ ¶ 24 Finally, the dissent expresses fear that the majority is reviving the common law doctrine of last clear chance. *Post* at 390, ¶ 42, 18 P.3d at 184. We agree that the judge-made doctrine, designed to prevent the harshness of pure contributory negligence, no longer applies in Arizona by operation of the comparative negligence statute. *Dykeman v. Engelbrecht*, 166 Ariz. 398, 400–01, 803 P.2d 119, 121–22 (App.1990). The last clear chance doctrine does not impose liability for these damages upon the Gunnells; rather the affirmative duties imposed by section 40–360.23(B) supplies the liability. Indeed, the statute expressly contemplates cir-

---

2. Section 40–360.26(A) provides that any person who damages an underground facility because he fails "to obtain information as to its location, ... to take measures for the protection of the facilities or ... *to excavate in a careful and prudent manner*" is liable to the owner of the facility. (Emphasis added.) The liability provided for in this section is in addition to, not instead of, the

liability imposed in section 40–360.28(B) for physical contact with an underground facility caused by violation of the statute. Thus, the Gunnells' contention that Mr. Gunnell excavated carefully and prudently would not bar a claim under section 40–360.28(B), even if we were to conclude that it barred a claim under section 40–360.26(A).

cumstances, such as those before us, where unmarked facilities are located after the blue-staking is complete. It is at this point that the excavator has the affirmative obligation to notify the owner or organization designated by the owner. These obligations are imposed by statute, not by revival and operation of the last clear chance doctrine.

¶ 25 With that being said, we expressly reaffirm our holding that if an excavator, as the last in the line of responsible parties, fails to comply with the statute's requirements to either notify the owner of an unmarked facility or comply with the statutory procedures for determining whether the facility is abandoned, the excavator is liable for any damage to an underground facility caused by such failure. In addition, the excavator is liable to indemnify the owner of the facility for any damages the owner must pay to third parties for injuries caused by the excavator's failure to comply with the statute. Nothing in the Act indicates that the excavator may escape liability for a portion of the damages by claiming that the owner was also negligent.

## III. *Attorneys' Fees*

¶ 26 APS requests that this Court award its reasonable attorneys' fees and costs on appeal. Pursuant to A.R.S. section 40–360.27 (1996), we award APS its attorneys' fees on appeal. Additionally, because APS is the prevailing party in this appeal, we award APS its costs on appeal. The award of attorneys' fees and costs is contingent upon APS's compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶ 27 For the foregoing reasons, we affirm the trial court's decision.

CONCURRING: MICHAEL D. RYAN, Presiding Judge.

FIDEL, Judge, dissenting.

¶ 28 Both APS and Mr. Gunnell were negligent; indeed, both were negligent per se.

¶ 29 When APS undertook to blue-stake the site of a pending excavation, it negligently failed to locate and mark an active power line and to notify the excavator that it had that power line on site. (APS lost track not only of the placement, but of the existence and non-conforming properties of its power line; thus, APS insisted for a time after the explosion that no APS power line could conceivably have been encased in steel.) By failing to locate and mark its own active facility, APS violated A.R.S. § 40–360.22(B) and (I).

¶ 30 As for Mr. Gunnell, when his initial efforts to determine the owner of the unusual steel-encased facility revealed only that it was not an active water line, he assumed it to be abandoned and commenced his excavation without re-contacting the Blue Stake Center to verify whether the facility was truly abandoned or active in fact. In so doing, Mr. Gunnell violated A.R.S. §§ 40–360.22(I) and 40–360.23(B).

¶ 31 We must infer for the purpose of summary judgment that both parties' negligence contributed directly to the explosion-that had either met the requirements of the statute, the explosion would not likely have occurred. The acts of both thus fall within the Underground Facilities Act. The liability of APS is addressed by A.R.S. § 40–360.28(C), which provides, "If the owner or operator fails to locate or incorrectly locates the underground facility, pursuant to this article, the owner or operator becomes liable for resulting damages, costs and expenses to the injured party." The liability of Mr. Gunnell is addressed by A.R.S. § 40–360.28(B), which provides, "If a violation of this article results in physical contact with an underground facility, the violator is liable to the owner of the facility for all damages to the facilities and costs, expenses and damages to third parties incurred by the owner of the facility as a result of the contact."

¶ 32 The plain text of both subsections encompasses the circumstances of this case. Neither subsection purports to trump the other; nor does either purport to be superseded or rendered inapplicable when the other applies. The task of the court should therefore be to harmonize the two provisions

and give reasonable scope to each. *See, e.g., State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970) ("If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent.").

¶ 33 The majority acknowledges this responsibility and professes to meet it; but instead of harmonizing the two subsections, the majority subordinates one to the other. That is, in cases of active negligence by both the facility owner and the excavator, the majority interprets subsection B as negating subsection C.

¶ 34 I disagree with this approach. We should not adopt an interpretation that negates either subsection when a "reasonably practical" alternative interpretation that renders the two subsections "harmonious and consistent" is available to the court. *See id.* Specifically, when both the facility owner and the excavator have caused an accident—the owner by failure to locate and identify the facility, the excavator by failure to verify its identity and status—the statute should be interpreted to make both tortfeasors responsible for the resulting damage, with their relative responsibility to be determined by the fact-finder in proportion to their relative degrees of fault.

¶ 35 A fault-based proportionate allocation of responsibility in such circumstances makes sense of the Underground Facilities Act in the following three respects:

¶ 36 First, as I have indicated, a fault-based proportional allocation harmonizes the liability provisions of the Underground Facilities Act with each other. Negating neither, such an interpretation provides reasonable scope and deterrent force to each.

¶ 37 Second, a fault-based proportional allocation more fairly accommodates an Act that undertakes to make "violators" responsible for the consequences of their violations. Specifically, subsection A.R.S. § 40-360.28(B) allocates responsibility to a "violator" when "a violation of this article results in physical contact with an underground facility." Here, the excavator, Mr. Gunnell, did not commit the only violation of the article. The owner, APS, violated the article as well, by its failure to locate and identify the line.[3] *See* A.R.S. § 40-360.28(C). As the majority interprets § 40-360.28, an owner violator escapes any responsibility and a non-owner violator is wholly responsible when the violations of each contribute to the harm. It is fairer and more sensible in my view to read the statute as making a non-owner violator wholly liable to the owner only where the owner is not a violator itself.

¶ 38 Third, the interpretation that I propose achieves a broader harmony among related statutes, for it construes the specific liability provisions of the Underground Facilities Act in a manner consistent with the general liability provisions of our comparative fault and contribution statutes, A.R.S. §§ 12-2505 to 2506 (Supp.2000). *See id.* (statutes that "relate to the same subject" should be "construed as one system governed by one spirit and policy," and "as though they constitute[ ] one law").

¶ 39 In our comparative fault and contribution statutes, the Arizona legislature undertook to increase the fairness of our tort system by making all contributing tortfeasors bear responsibility for accidental injuries in proportion to their relative degrees of fault. *See Hutcherson v. City of Phoenix,* 192 Ariz. 51, 54, ¶¶ 15–16, 961 P.2d 449, 452 (1998). The underlying public policy of these statutes is to make each person "responsible for paying his or her percentage of fault *and no more.*" *Dietz v. General Elec. Co.,* 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991). This public policy of proportionate-fault-based liability is so expansive that it extends even to the comparative allocation of liability among intentional, wilful, and negligent tortfeasors. *See Hutcherson,* 192 at 54–55, ¶¶ 17–20, 961 P.2d at 452–53; *Williams v. Thude,* 188 Ariz. 257, 259, 934 P.2d 1349, 1351 (1997). There

---

3. Similarly, A.R.S. § 40-360.26(A) does not apply only to excavators, but rather to "any person" who damages an underground facility "as a result of failing to obtain information as to its location, failing to take measures for protection of the facilities *or* failing to excavate in a careful and prudent manner." (Emphasis added.) APS, no less than Gunnell, committed damaging acts within the ambit of this statute.

is no good reason to attribute an inconsistent policy to the Underground Facilities Act when a consistent interpretation is readily at hand.

¶ 40 The majority's interpretation not only clashes with the strong public policy reflected in our comparative negligence and several liability statutes; it also clashes with two manifestations of that policy in our common law of torts:

¶ 41 First, the majority effectively attributes to A.R.S. § 40–360.28(B) a preemptive legislative determination that an excavator's negligent failure to verify the identity and nature of a facility constitutes an intervening, superseding cause-one that entirely relieves the facility owner of responsibility for its own negligent failure to blue-stake the facility with reasonable care. Yet according to our law of torts, an intervening cause is not a superseding cause unless it is both unforeseeable and, upon hindsight, extraordinary. *See, e.g., Ontiveros v. Borak,* 136 Ariz., 500, 506, 667 P.2d 200, 206 (1983) ("[T]he original actor is relieved from liability for the final result when, and only when, an intervening act of another was unforeseeable by a reasonable person in the position of the original actor *and* when, looking backward, after the event, the intervening act appears extraordinary ."). It is neither unforeseeable nor, in hindsight, extraordinary, when a utility company masks an underground power line in an uncharacteristic casing and neglects to locate and blue-stake the line before an excavation, that the excavator may misconstrue the line and strike it. Thus, the majority, by its interpretation, unnecessarily renders the Underground Facilities Act inconsistent with Arizona's law of intervening, superseding cause.

¶ 42 Second, the majority similarly attributes to A.R.S. § 40–360.28(B) a preemptive legislative determination that an excavator's negligent failure to verify the identity and nature of a facility constitutes a last clear chance—an intervening chance to avert harm—that entirely relieves the facility owner of responsibility for its own negligent failure to blue-stake the facility with care. But the Arizona courts have abandoned the doctrine of last clear chance after the adoption of comparative negligence, deeming that doctrine inconsistent with a public policy that distributes responsibility to all tortfeasors in proportion to their relative degrees of fault. *See Dykeman v. Engelbrecht,* 166 Ariz. 398, 400–01, 803 P.2d 119, 121–22 (App.1990). Thus, the majority, by its interpretation, unnecessarily renders the Underground Facilities Act inconsistent with Arizona's law of last clear chance.

¶ 43 I do not mean to suggest that the legislature could not explicitly adopt the scheme the majority attributes to it, if the legislature wished to do so. But the legislature did not profess to do so, and I do not believe we should use our interpretive powers to attribute to a silent statute an intent so inconsistent with Arizona's fundamental law of torts. *See Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 274, 872 P.2d 668, 678 (1994) ("If the legislature intends to deny, abrogate, or preempt [the common-law], it must clearly say so.").

¶ 44 For the foregoing reasons, I respectfully dissent from the majority's conclusion that, in circumstances such as these, the Underground Facilities Act relieves a facilities owner of responsibility for the consequences of its blue-staking negligence. Under that statute, as under the statutes and the case law that shape our general law of torts, the owner and the excavator should each bear liability in proportion to their relative degrees of fault.