IN THE SUPREME COURT OF THE STATE OF ARIZONA
En Banc

| | | |
|---|---|---|
| STANLEY and JENNIFER GUNNELL, husband and wife, | ) ) ) | Arizona Supreme Court No. CV-01-0120-PR |
| Plaintiffs-Appellants, | ) ) | Court of Appeals Division One |
| v. | ) ) | No. 1 CA-CV 99-0510 |
| ARIZONA PUBLIC SERVICE COMPANY, an Arizona corporation, | ) ) ) | Yavapai County Superior Court No. CV 96-0715 |
| Defendant-Appellee. | ) ) | |
| _____ | ) | **O P I N I O N** |

Appeal from the Superior Court in Yavapai County
The Honorable Raymond W. Weaver, Judge
REVERSED AND REMANDED

_____

Opinion of the Court of Appeals, Division One
199 Ariz. 382, 18 P.3d 176 (App. 2001)
VACATED

Law Offices of Bruce E. Rosenberg                                        Prescott
        By:    Bruce E. Rosenberg
        - and -
David L. Abney                                                           Phoenix
Attorneys for Plaintiffs-Appellants

Gaona Moore P.C.                                                         Phoenix
        By:    David F. Gaona
        - and -
Lewis and Roca, L.L.P.                                                   Phoenix
        By:    Susan M. Freeman
               Robert Fisher
Attorneys for Defendant-Appellee

Beale & Micheaels, P.C.                                                  Phoenix
        By:    Michael A. Beale
Attorneys for Amici Curiae Southwest Gas Corp., Salt River
Agricultural Improvement & Power District, Mohave Electric
Cooperative, Inc., and Tucson Electric Power Co.

Charles M. Brewer, Ltd.                                                                    Phoenix
        By:     Charles M. Brewer
                Luis P. Guerra
                George H. Lyons
                John B. Brewer
        - and -
Haralson, Miller, Pitt & McAnally, P.C.                                      Tucson
        By:     D. Dale Haralson
Attorneys for Amici Curiae Charles M. Brewer, Ltd., and
Haralson, Miller, Pitt & McAnally, P.C.

Osborn Maledon, P.A.                                                                   Phoenix
        By:     David G. Campbell
                Thomas L. Hudson
        - and -
Fennemore Craig, P.C.                                                                   Phoenix
        By:     Timothy Berg
                Theresa Dwyer                                                              Tucson
Attorneys for Amici Curiae CoxCom, Inc., Arizona Cable
Telecommunications Association, and Qwest Corporation

FELDMAN, Justice

¶ 1        Stanley and Jennifer Gunnell petitioned for review from the court of appeals' affirmance of summary judgment in favor of Arizona Public Service Company (APS). We granted review to resolve an issue of statewide importance — whether and how the principles of comparative negligence can be applied in a case involving the Underground Facilities Act, A.R.S. §§ 40-360.21 to 40-360.32. We have jurisdiction pursuant to article VI, § 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

**FACTS AND PROCEDURAL HISTORY**

¶ 2        Stanley Gunnell (Gunnell), sole proprietor of an excavation business, had a subcontract to excavate for a contractor installing a sewer line in Cottonwood, Arizona. Before commencing excavation, Gunnell met with the Cottonwood City Engineer and called the local Blue Stake Center to notify utilities and have them mark their lines. The Blue Stake Center was established as a one-call notification

system by owners of underground utility lines[1] to assist excavators in complying with statutory requirements to notify underground facility owners prior to excavating. Once an excavator calls the Blue Stake Center, the center then notifies all of its members in the area. Owners then have two working days to respond to the request and mark their lines. A.R.S. § 40-360.22(B).

¶ 3        After Gunnell's call, the Blue Stake Center notified all its members, including APS, to mark their lines in the area in which Gunnell planned to excavate. APS delayed, and Gunnell had to call three more times before APS finally staked its lines. After commencing excavation, Gunnell uncovered a galvanized steel pipe that no one had identified or marked. Because APS had not marked the line and Gunnell, an excavator with twenty years' experience, had never before seen an electric line encased in steel piping, he thought the pipe was part of the local water system. He therefore contacted the two local water companies, but they both denied ownership. Gunnell did not again call APS or the Blue Stake Center; instead, based on his experience and the local water company's advice,[2] he concluded that the galvanized steel pipe was an abandoned water line that could be removed by cutting it out of the trench. Proceeding with the excavation, Gunnell had James Knox (Knox), a sub-contractor or employee,[3] cut into the pipe with a saw. The pipe actually encased a live, high-voltage APS electric wire that exploded, seriously and permanently injuring both Gunnell and Knox.

¶ 4        APS initially denied owning the line, assuring Gunnell it could not be an APS line if it were encased in a galvanized steel pipe. Later, when its employees visited the site, APS acknowledged ownership and admitted its employee failed to identify the pipe for Gunnell's excavation.

¶ 5        Gunnell brought a negligence action against APS. APS then counterclaimed for damages to its electrical line and indemnification for a separate damage action brought against it by Knox. The

---

[1] Such lines are called facilities in the Underground Facilities Act. *See* A.R.S. § 40-360.21(10).

[2] There is some evidence that an employee of one of the local water companies told Gunnell the pipe was probably an abandoned water line because the joint was cracked when Gunnell began excavating and no water had leaked out.

[3] On the record in this case, it is not altogether clear in what capacity Knox was working at the time of the incident in question.

trial judge granted summary judgment for APS on both the complaint and counterclaim because Gunnell's negligence in excavating the supposedly abandoned line before first determining its true nature superseded any negligence by APS. On Gunnell's appeal, a divided court of appeals affirmed the lower court's ruling. *Gunnell v. Arizona Pub. Serv. Co.*, 199 Ariz. 382, 18 P.3d 176 (App. 2001). Gunnell petitioned for review, arguing that if both he and APS were at fault, the Uniform Contribution Among Tortfeasors Act (UCATA) applied, so that issues of comparative negligence must be left to the jury. Given the importance of the question, we granted review, ordered supplemental briefing, and heard oral argument.

**¶ 6** Reviewing a grant of summary judgment, we take the facts and all reasonable inferences in the light most favorable to Gunnell, the party opposing the motion. *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

## DISCUSSION

**A.     Underground Facilities Act**

### 1.     Responsibilities of excavators and owners

**¶ 7** Several sections of the Underground Facilities Act, found at A.R.S. §§ 40-360.21 through 40-360.32, apply to the present case. First, an excavator must determine whether any underground lines exist in the area of excavation before beginning work.[4] Then, every owner of underground lines is directed to locate and mark its lines within two days of receiving notice of an excavation, and excavators cannot commence their work until marking is completed.[5] Even after the owner marks its lines, an

---

[4]A.R.S. § 40-360.22(A) states in part:

> A person shall not make or begin any excavation in any public street . . . without first determining whether underground facilities will be encountered, and if so where they are located from each and every public utility, municipal corporation or other person having the right to bury such underground facilities . . . .

[5]A.R.S. § 40-360.22(B) provides in part:

> Upon receipt of inquiry or notice from the excavator, the owner of the facility shall respond as promptly as practical, but in no event later than

excavator must still act with reasonable care.[6] An excavator who encounters an unmarked line must notify either the owner or the organization designated by the owner (in this case, the Blue Stake Center) of the unmarked line.[7] Neither an excavator nor an owner may assume an underground line is abandoned without verification.[8]

**¶ 8** On this record, there is evidence that APS violated A.R.S. § 40-360.22(B) and (I) by breaching the requirement of identifying and marking its lines and by negligently failing to identify and warn of the location and dangerous nature of its high-voltage line encased in the galvanized pipe. Similarly, there is evidence that Gunnell violated A.R.S.§§ 40-360.23(B) and 40-360.22 (I) when he uncovered an unmarked line and failed to appropriately verify its type (by notifying either the Blue Stake Center or APS), and thus determine whether it was actually abandoned, before he cut into it.

---

two working days, by marking such facility with stakes, paint or in some customary manner. No person shall begin excavating before the location and marking are complete or the excavator is notified that marking is unnecessary.

[6]A.R.S. § 40-360.23(A) explains:

Obtaining information as required by this article does not excuse any person making any excavation from doing so in a careful and prudent manner, nor shall it excuse such persons from liability for any damage or injury resulting from his negligence.

[7]A.R.S. § 40-360.23(B) provides:

After markings have been made pursuant to § 40-360.22, an excavator shall notify either the owner of an underground facility or an organization designated by the owner if the excavator encounters an underground facility that has not been located and marked or has been marked in the wrong location.

[8]A.R.S.§ 40-360.22(I) states that:

The *owner* of an underground facility *shall notify the excavator whether* the *facility is active or abandoned* . . . . For all purposes under this article, a facility owner, *excavator . . . may not . . . treat an underground facility* is [*sic*] *abandoned, unless the facility has been verified as abandoned* pursuant to this subsection.

(Emphasis added.)

5

## 2.    Liability of excavators and owners

¶ 9        A person who damages a line as a result of failing to excavate in a careful and prudent manner is liable to the owner of the underground line for the repair costs. A.R.S. § 40-360.26. Section 40-360.28(B), the key to the case, supplements this as follows:

> If a violation of this article results in physical contact with an underground facility, the violator is liable to the owner of the facility for *all* damages to the facilities and costs, expenses and damages to *third parties* incurred by the owner of the facility as a result of the contact.

(Emphasis added.) Thus, under subsection B, a negligent excavator must not only pay the owner's repair costs but must indemnify the line owner for all liability to third parties that the owner incurs as a result of the violator's contact with the line. However, when an owner fails to locate or mark its lines, the owner is "liable for the resulting damages, costs and expenses to the injured party."[9]

¶ 10       While the requirements imposed by statute on owners and excavators are clear, the consequences for violations, as described in A.R.S. § 360.28(B) and (C), are not nearly so clear. Specifically, reading the statutes together and noting the placement of the word "all" in subsection (B), one could argue that a violating excavator is liable for both all damages to the line and all damages the violating owner must pay to third parties, even those caused by the owner's violation. On the other hand, the statute could be read to require the excavator to pay for all damage to the line and, with respect to damages to third parties, only the proportion attributable to the excavator's violation.

¶ 11       The problem is made more difficult in the present case because the injured person seeking damages is not an employee of the excavator but, as sole proprietor of his business, the excavator himself. Thus, the excavator in this case is the injured party, not a third party. Section 40-360.28(B), however, only requires indemnity for claims made by third parties, not for claims made by one violator against another. Gunnell argues that when, as in the present case, the excavator has himself been injured, article XVIII, §§ 5 and 6 of the Arizona Constitution require that principles of comparative negligence

---

[9]A.R.S. § 40-360.28(C).

apply. APS argues that because Gunnell was a violator/excavator, he must indemnify APS against all claims, including his own, so that the comparative negligence statute does not apply.

## B. In the trial court

¶ 12          These conflicting interpretations clashed in the trial court, where APS asserted Gunnell was not only responsible to APS for its $524.41 property damage but must also indemnify APS for all injuries sustained by Knox as a result of Gunnell's statutory violation.[10]  In awarding summary judgment to APS on Gunnell's complaint and APS's counterclaim, the trial judge concluded that A.R.S. § 40-360.23(B) was dispositive:  When Gunnell came across the unmarked, unidentified steel pipe, he was required to notify the owner or the Blue Stake Center, which he failed to do.  The judge reasoned that:

> It is Plaintiff's failure to contact the Blue Stake Center after he encoun-
> tered the unmarked, unidentified pipe which necessitates this result,
> and the failure of APS to have originally identified the pipe is not relevant
> under A.R.S. § 40-360.23B.

## C. In the court of appeals

¶ 13          We set out the reasoning of the court of appeals' majority and dissent in some detail because it clearly defines some of the issues as well as encompasses most of the arguments the parties make in this court.  The majority first concluded that Gunnell violated the Underground Facilities Act by treating the line as abandoned and by cutting the line before having identified the pipe's true owner. *Gunnell*, 199 Ariz. at 385-86 ¶¶ 13-15, 18 P.3d at 179-80 ¶¶ 13-15.  The court then rejected Gunnell's claim that principles of comparative negligence should apply if Gunnell were found negligent, holding

---

[10]Knox has also sued APS, seeking damages for the injuries he sustained in the explosion. APS has moved for summary judgment, claiming Knox was also a violator under the Underground Facilities Act and his case should therefore be dismissed because he is not entitled to recover damages against APS and must indemnify it on Gunnell's claim.  Of course, *if* Knox were Gunnell's employee, presumably he would also be barred by the immunity doctrine from suing his employer for damages. His case is currently pending in Yavapai County Superior Court.

that under A.R.S. § 40-360.28(B), Gunnell's negligent conduct was a superseding cause of the explosion. *Id.* at 387 ¶¶ 22-23, 18 P.3d at 181 ¶¶ 22-23. Acknowledging that this conclusion was "inconsistent with Arizona's common law rule governing intervening and superceding causation,"[11] the majority explained its holding as follows:

> The legislature determined, by writing the Act as it did, that the acts or omissions of either a facilities owner or excavator constitute something similar to the common law's intervening and superceding cause. But because the causation element for liability for the damages in this case is governed by statute, rather than common law, we need not defer to and endeavor to apply the common law's rules governing intervening and superceding causation.

*Id.*, ¶ 23. Thus, "if an excavator, as the last in the line of [negligently] responsible parties, fails to comply" with the conduct the statute requires, comparative negligence does not apply. *Id.* at 388 ¶ 25, 18 P.3d at 182 ¶ 25. Not only is the excavator barred from any recovery, he is liable as a matter of law for damage to the line and must indemnify the line's owner against any damages for which the negligent owner may be liable to any third party. *Id.*

¶ 14    The dissent disagreed with this reading of the Underground Facilities Act. Pointing out that APS was liable "to the injured party" under A.R.S. § 40-360.28(C) for failing to correctly locate its lines and that Gunnell was liable to the owner and third parties under subsection B of the same statute, the dissent noted that "neither subsection purports to trump the other" and the court's job should be "to harmonize the two provisions" *Id.*, ¶¶ 31-32 (Fidel, J. dissenting). This could be accomplished with a fault-based proportionate allocation under the comparative negligence statutes. If the legislature wanted, it could "explicitly adopt" the interpretation followed by the majority; but "the legislature did not profess to do so," so we should not "use our interpretive powers to attribute

---

[11] Arizona and other jurisdictions hold that a superseding cause is an intervening act of another that, looking backward after the event, was both unforeseeable and extraordinary. *Ontiveros v. Borak*, 136 Ariz. 500, 506, 667 P.2d 200, 206 (1983); *Serrano v. Kenneth A. Ethridge Contracting Co.*, 2 Ariz.App. 473, 475-76, 409 P.2d 757, 759-60 (1966); RESTATEMENT (SECOND) OF TORTS § 435(2), cmts. c and d, and § 442 (1965).

to a silent statute an intent so inconsistent with Arizona's fundamental law of torts." *Id*. at 390 ¶ 43, 18 P.3d at 184 ¶ 43.

¶ 15          We disagree in part with both the majority and the dissent.

### D.     Resolution

¶ 16          On this record, we must assume both Gunnell and APS were negligent.  The statutes set a certain standard of care.  By not further contacting APS or the Blue Stake Center, and by treating the unidentified, unmarked pipe as abandoned, Gunnell violated A.R.S. §§ 40-360.23(B) and 40-360.22(I). By failing to identify and mark its lines, APS violated A.R.S. § 40-360.22(B) and (I).  Violation of a statutory standard of care is usually held to be negligence per se. *Brannigan v. Raybuck*, 136 Ariz. 513, 517, 667 P.2d 213, 217 (1983) (citing *Orlando v. Northcutt*, 103 Ariz. 298, 300, 441 P.2d 58, 60 (1968)).

¶ 17          As Judge Fidel's dissent points out, the text of the Underground Facilities Act does not declare that the excavator's negligence is a superseding cause.  In our view, it implies just the opposite, for it requires the violating excavator to indemnify a violating owner for damages to a third party. If the excavator's negligence were a superseding cause of the third party's injury, the owner's negligence would not be a contributing cause and the owner would never be liable for those injuries.  RESTATEMENT (SECOND) OF TORTS § 435(2).  There would be nothing to indemnify, and that portion of the statute would be meaningless.

¶ 18          Judge Fidel also argued that a construction that makes each violator responsible in proportion to its contribution to the harm may thus be "fairer and more sensible" than a construction making an injured, negligent excavator wholly responsible to the owner even though the owner is also a violator. *Gunnell*, 199 Ariz. at 389 ¶ 37, 18 P.3d at 183 ¶ 37 (Fidel, J., dissenting).  Such a construction also "achieves a broader harmony among related statutes" because it construes the Underground Facilities Act consistently with the general liability provisions of common law and with the comparative fault and contribution statutes, A.R.S. §§ 12-2505 and 12-2506.  The statutes all relate to the subject of

9

liability for negligence and should therefore be construed as a single system governed by the general spirit and policy of the law. *Id*., ¶ 38-39 (Fidel, J., dissenting) (citing *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 54 ¶¶ 15-16, 961 P.2d 449, 452 ¶¶ 15-16 (1998); *Dietz v. General Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991)).

¶ 19        As APS and certain of the *amici* point out, the problem with such reasoning, logical though it may be, is that similar provisions regarding indemnity are found in a statute dealing with a similar danger. *See* the High Voltage Power Lines and Safety Restrictions Act (Overhead Lines Act), A.R.S. §§ 40.360.41 to 40.360.45. That act regulates activity near high-voltage overhead lines, imposing statutory duties on contractors working in proximity to such lines and prohibiting them from requiring their employees or any other person to perform any function near those lines without first having entered into a safety agreement with the lines' owner. *See* A.R.S. § 40-360.43. In language quite similar to that used in the statutes applicable to the present case, the Overhead Lines Act further provides as follows:

> If a violation of this article results in physical or electrical contact with any high voltage overhead line, the person or business entity violating this article is liable to the public utility . . . for *all* damages to the facilities and all costs and expenses, *including damages to third persons, incurred by the public utility* as a result of the contact.

A.R.S. § 40-360.44(B) (emphasis added).

¶ 20        Contrary to Gunnell's view with respect to the Underground Facilities Act, both divisions of our court of appeals have held that in the Overhead Lines Act, the legislature intended to transfer all responsibility for a worker's personal injuries from the negligent owner of the lines to the negligent contractor working near the lines. *See, e.g.*, *Citizens Util. Co. v. New West Homes, Inc.*, 174 Ariz. 223, 848 P.2d 308 (App. 1992) (citing cases); *Arizona Pub. Serv. v. Shea*, 154 Ariz. 350, 742 P.2d 851 (App. 1987); *Tucson Elec. Power Co. v. Swengel-Robbins Constr. Co.*, 153 Ariz. 486, 737 P.2d 1385 (App. 1987). Of course, in each of these cases the contractor/violator was the employer of an injured worker who had filed an action against the negligent owner. The duty to indemnify was imposed on the negligent contractor rather than on the injured worker himself. This case therefore presents a situation not yet seen in our courts, for here we have a plaintiff who is both the injured worker and

the excavator/contractor. Thus, Gunnell and certain of the *amici* argue that unlike any of the overhead lines cases that have been adjudicated, interpretation or application of the statute is constrained by Arizona's constitutional provisions requiring application of contributory/comparative negligence principles.

¶ 21    It is this argument that compels us to agree in part with Gunnell, for under the facts of this case, the majority's interpretation of the statutes would require us to conclude that the Underground Facilities Act violates the provisions of article XVIII, §§ 5 and 6 of Arizona's constitution. Contrary to Judge Fidel's statement in his dissent, the legislature is not free to "adopt the scheme the majority attributes to it, if the legislature wished to do so." *Gunnell,* 199 Ariz. at 390 ¶ 43, 18 P.3d at 184 ¶ 43 (Fidel, J. dissenting).

¶ 22    For purposes of the summary judgment motions, there was evidence that both Gunnell and APS were negligent per se. Thus, the court should ordinarily apply the provisions of A.R.S. § 12-2502, the portion of UCATA that enacts a comparative negligence regime. We have held that the comparative negligence statute is constitutional under the provisions of article XVIII, § 5 of our constitution, which declares that contributory negligence "shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." *See Hall v. A.N.R Freight Sys., Inc.*, 149 Ariz. 130, 717 P.2d 434 (1986). We did *not* hold or intimate, however, that the legislature could effectively repeal article XVIII, § 5 by adopting UCATA. On the contrary, the constitutional requirement that the defenses of contributory negligence and assumption of the risk be left to the jury applies to the comparative negligence regime just as it did to contributory negligence. *See Williams v. Thude*, 180 Ariz. 531, 885 P.2d 1096 (App. 1994), *approved and explained in Williams v. Thude (Williams II)*, 188 Ariz. 257, 260, 934 P.2d 1349, 1352 (1997).

¶ 23    Thus, in a negligence case, the jury is the sole arbiter of fact and law as to the defenses of contributory and comparative negligence. *Williams II*, 188 Ariz. at 260, 934 P.2d at 1352; *see also Heimke v. Munoz,* 106 Ariz. 26, 28, 470 P.2d 107, 109 (1970) (art. XVIII, § 5 gives a jury not only "the right to determine the facts, but to apply or not, as the jury sees fit, the law of contributory negligence

11

as a defense."), *overruled or disapproved on other grounds by Jurek v. Jurek*, 124 Ariz. 596, 606 P.2d 812 (1980). Judges may not grant summary judgment or direct a verdict for a defendant on the ground that the plaintiff was contributorily negligent. *Williams II*, 188 Ariz. at 259-60, 934 P.2d at 1351-52; *Heimke,* 106 Ariz. at 30, 470 P.2d at 111; *Boozer v. Arizona Country Club,* 102 Ariz. 544, 434 P.2d 630 (1967). To do so is not only error but has been held to be fundamental error. *Williams*, 180 Ariz. at 539, 885 P.2d at 1104; *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 176 Ariz. 383, 387, 861 P.2d 668, 672 (App.1993); *but see Williams II*, 188 Ariz. at 261, 934 P.2d at 1353.

¶ 24        Yet the trial judge did just that — grant summary judgment for APS because Gunnell failed to comply with the requirements of the Underground Facilities Act. Of course, both the trial judge and court of appeals, in affirming, concluded that the legislature made an excavator's negligence a superseding cause and thus relieved the negligent owner of all liability to either the injured excavator or any third person. However, article XVIII, § 5 applies not just to the courts but also to the legislature. *Schwab v. Matley*, 164 Ariz. 421, 425, 793 P.2d 1088, 1092 (1990). We do not believe, therefore, that the constitution allows the legislature to negate article XVIII, § 5 or 6 by decreeing through statute that a negligent actor whose conduct was *a* cause of injury was the sole cause of the injurious event.[12]

¶ 25        Such a legislative declaration would violate section 5 by taking the issue of a plaintiff's negligence from the jury. It would violate section 6 by abrogating the injured person's cause of action against one whose negligence was a cause of the injury. Our courts have made it clear that when there is evidence of negligence by a claimant, whether plaintiff or counterclaimant, the provisions of sections

---

[12]For example, could a statute provide that the negligence of any person who fell in a retail store would be the sole cause of the accident even though the facts might show that both the store's operator and the injured person were antecedently negligent? Or could a statute provide that the negligence of a driver, involved in any automobile accident that occurred during road construction work, would be the sole cause of the accident, notwithstanding the contractor's antecedent failure to warn or comply with the Manual on Uniform Traffic Control Devices? On the one hand, such statutes take the question of contributory negligence from the jury by requiring a verdict against the plaintiff and in favor of the defendant, thus violating the command of article XVIII, § 5 that the question of contributory negligence shall always be left to the jury. On the other hand, such statutes result in an abrogation of the injured person's right of action against one whose negligence was a cause of the accident.

5 and 6 cannot be avoided by judicial or legislative relabeling. "A contributory negligence issue cannot be taken from the jury by the simple expedient of calling it an issue of causation." *Markowitz v Arizona Parks Bd.*, 146 Ariz. 352, 359, 706 P.2d 364, 371 (1985) (once there was evidence that defendant's negligent failure to warn was cause of injury, it was improper to grant summary judgment for defendant on theory that plaintiff's later negligent disregard of danger was sole proximate cause of plaintiff's injury); *see also Schwab,* 164 Ariz. at 423-24, 793 P.2d at 1090-91 (under art. XVIII, § 5 legislature cannot enact statute making conduct of injured person bar to recovery against one whose negligent conduct was *a* cause of injury); *Beach v. City of Phoenix*, 136 Ariz. 601, 604, 667 P.2d 1316, 1320 (1983); *Tobel v. State*, 189 Ariz. 168, 939 P.2d 801 (App. 1997) (plaintiff's failure to look before entering street raises defense of contributory negligence; issue cannot be taken from jury by calling it causation question).

**¶ 26** We can recognize contributory negligence when we see it, no matter what the label. As a noted jurist said long ago:

> A bear well painted and drawn to the life is yet the picture of a bear, although the painter may omit to write over it, "this is the bear." It is no more necessary to put the name of the action in a good declaration than to write Bear over a good picture of that beast.

*Prewitt v. Clayton*, 5 T.B.Mon. 4, 2 Ky. 4 (App. 1827). Thus "(f)rom 1920 to the present time it has been consistently held that when there is evidence that the plaintiff was negligent, whether such negligence was a contributing cause of the injury as would deprive plaintiff of the right to recovery was solely a question for the jury." *Layton v. Rocha*, 90 Ariz. 369, 370, 368 P.2d 444, 445 (1962). Undisputed evidence may show that the plaintiff was negligent and that this was a contributing cause of the injury; nevertheless, under the correct interpretation of article XVIII, § 5, the jury *may* find in favor of the plaintiff. *Id*.

## E.    Comparison with legislative intent

¶ 27        Nor do we believe that the legislature intended differently.  Nothing in the sparse legislative history of the Underground Facilities Act indicates any intent to enact a statute of superseding cause.  *See* Minutes of House Committee on Economic Affairs, March 5, 1973; Minutes of Senate Committee on Agriculture, Commerce and Labor, April 5, 1973.  In the Senate committee, an APS representative "explained the provisions of the bill" as intended to "provide safe working conditions and prevent the injuries and deaths that are occurring."  Senator Mawhinney said he would support the bill because of his "concern regarding people involved in accidents."  In the House committee, a telephone company lawyer stated that the "intention of this bill is to require individuals who are excavating to make inquiries of the utility."  There is nothing in the minutes of either committee to suggest that the Underground Facilities Act was intended to transfer all liability for fault to the negligent excavator and leave an owner generally immune from answering for its own negligent conduct.

¶ 28        In its supplemental brief, APS argues that the legislative history of the Underground Facilities Act and its amendments supports the exclusion of comparative fault principles.  APS notes that the legislature established a study commission on underground facilities[13] whose task force[14] was to consider and report back, *inter alia*, on "issues concerning liability for damages to facilities and delay."  Respondent's Supplemental Brief at 16-17, quoting 1988 Ariz. Sess. Laws ch. 232, § 5(B)(2).  The legislative history is minimal but somewhat informative and, contrary to APS's contentions, supports the application rather than exclusion of comparative fault principles.  For example, one study commission subgroup was asked by a contractors' organization to "identify those items requiring legislative action which will *equitably identify responsibility* for facility damage."  Minutes of Joint Legislative Study Commission on Underground Facilities, Attachment 2, November 14, 1988 (emphasis added).  If anything,

---

[13]Established by 1988 Ariz. Sess. Laws ch. 232.

[14]The task force consisted of members of the private sector, political subdivisions, and regulatory agencies representing interests affected by underground line laws and problems.  The task force was divided into subgroups that addressed various topics, including liability.

this evinces an intent for the responsibility for line damage to be fairly apportioned among those responsible. Moreover, the Ad Hoc Blue-Stake Underground Study Group issued an interim report describing its discussion of liability issues, including the neccessity to determine the "[r]esponsibility of each party and *how to administer comparative negligence.*" Interim Report (H.B. 2061[15]), November 14, 1988, at 2 (emphasis added).

¶ 29 Thus, it appears from the legislative history that those both knowledgeable and concerned about the Underground Facilities Act may have assumed that comparative negligence would be applied and were conscious that they must equitably apportion responsibility for line damage.

¶ 30 APS finds it significant that the study group recommended, and the legislature agreed, not to alter the liability and indemnity provisions despite UCATA's enactment. However, the interim report explains *why* the group recommended the liability provisions not be changed: "Because there are so many variables involved in liability issues, it would be extremely difficult if not impossible to list in a statute. The consensus was liability issues are addressed appropriately in the present statute." *Id.*

¶ 31 We do not read this as a recommendation that comparative negligence not be applied but as an acknowledgment that it would be next to impossible to adequately address all liability issues in a statute. In fact, the section on liability had already been altered. In the Underground Facilities Act as originally passed in 1973, only the excavator was liable. However, the first time the Underground Facilities Act was amended[16] in 1981, the owner was *also* deemed liable.[17] This indicates recognition that both parties could be at fault.

¶ 32 This recognition, combined with the references to comparative negligence and equity, implies that the sections of the statute were to be read together and fault applied proportionately, rather

---

[15]H.B. 2061 was a strike-everything amendment to the Underground Facilities Act that prescribed procedures to be used for locating and marking underground lines.

[16]Amended by 1981 Ariz. Sess. Laws, ch. 153.

[17]No such equivalent exists in the Overhead Lines Act.

15

than one violation superseding another. Moreover, UCATA, with its comparative negligence system, was enacted after the Underground Facilities Act and on its face was intended to apply across the board to all types of tort actions, with a few specific exceptions, none of which is applicable to this case. If the legislature had intended to make an exception for this type of action, we have no doubt it would have said so when it passed the comparative negligence statute.

## F.      Legislative modification

¶ 33      APS argues that the legislature can eliminate or modify contributory negligence, citing *Hall*,149 Ariz. at 134, 717 P.2d at 438. *Hall* held in part that because article XVIII, § 5 of the Arizona Constitution provides only a procedural guarantee, the legislature is free to abolish or modify the defense of contributory negligence. The legislature did modify the defense by adopting comparative principles and, no doubt, could abolish it altogether. But as noted in ¶ 22, article XVIII, § 5 forbids the legislature or courts from compelling application of the doctrine as a matter of law and requires leaving the facts and law for the jury to apply. APS's interpretation of the Underground Facilities Act would establish contributory negligence of the injured excavator as a matter of law, which is exactly what article XVIII, § 5 prohibits.

## CONCLUSION

¶ 34      For all these reasons, the court of appeals' interpretation of the Underground Facilities Act cannot stand. When, as in the present case, an injured but negligent excavator asserts a claim against a negligent owner, the court may not base dismissal on what is, in reality, a question of contributory negligence. The effect of Gunnell's negligence in violating the Underground Facilities Act is for the jury to consider under the principles of comparative negligence. The proper method of putting the question to the jury is set forth by the court of appeals in *Williams*, 180 Ariz. at 537-38, 885 P.2d at 1102-03, and approved by us on review. *See Williams II*, 188 Ariz. at 260, 934 P.2d at 1352.

¶ 35    Nothing in this opinion addresses application of the statute in the usual situation in which, like the Overhead Lines Act cases, the negligent excavator may be called on to indemnify the negligent owner for the injuries sustained by the former's employee or some other third party.

¶ 36    The court of appeals' opinion is therefore vacated, the trial court's judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

 

_____
STANLEY G. FELDMAN, Justice


CONCURRING:


_____
CHARLES E. JONES, Chief Justice


_____
RUTH V. McGREGOR, Vice Chief Justice


_____
THOMAS A. ZLAKET, Justice (retired)